IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| WERNER JACK BECKER, DANA GUIDA, individually and on behalf of others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>CITIGROUP INC. d/b/a CITIBANK and CITIBANK, N.A.,<br><br>DEFENDANTS. | NO. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Class Plaintiffs, Werner Jack Becker and Dana Guida, file this class action complaint individually and on behalf of all others similarly situated against Defendants, Citigroup Inc. d/b/a Citibank and Citibank, N.A. (collectively "Citi"), and allege as follows:

**INTRODUCTION**

1. "Discrimination on the basis of race or color is contrary to the public policy of the United States," *Burks v. Poppy Constr. Co.*, 370 P.2d 313, 317 (Cal. 1962), and is "'invidious in all contexts,'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 214 (2023).

2. Because "[e]liminating racial discrimination means eliminating all of it," *id.* at 206, Congress extended the guarantee of racial neutrality in private contracting in the Civil Rights Act of 1866, *see* 42 U.S.C. §1981. Among other things, that guarantee prohibits discriminating against anyone because of the race of who they associate or do business with. *See, e.g.*, *Barrows v. Jackson*, 346 U.S. 249, 257–59 (1953) (declaring unlawful a restrictive racial covenant which prohibited whites from selling

1

to blacks); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir. 1986); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1488 (9th Cir. 1995).

3. This case involves express, unabashed racial discrimination that violates federal and state law. From July 14, 2016, to the present day, Citi has had an express policy of charging customers different ATM fees based on race. Under that policy, Citi does not charge out-of-network ATM fees to people who bank at financial institutions that are "minority owned." But it does charge those fees to people who bank at other financial institutions.

4. This policy was no secret. Citi has advertised its race-based pricing scheme, maintained it without interruption, and often boasted about it. This makes Citi's racial discrimination markedly different from the mine run of discrimination cases where intensive factual development is necessary to establish whether a defendant engaged in discrimination. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, it's indisputable that Citi intentionally discriminated against Plaintiffs and those similarly situated for banking with financial institutions owned by people of the wrong race.

5. Citi is thus liable to Plaintiffs and those similarly situated under both 42 U.S.C. §1981 and state law for each ATM fee they paid at Citi's ATMs.

**PARTIES**

6. Plaintiff Werner Jack Becker does not bank with Citi. He used a Citibank ATM at 8400 W. Broward Blvd., Plantation, FL 33324 and paid an out-of-network fee in July 2023 because he was not a client of a "minority-owned" bank or credit union.

7. Plaintiff Dana Guida does not bank with Citi. She used a Citibank ATM at 5825 N. University Dr., Ft. Lauderdale, FL. 33321 and paid an out-of-network fee in June 2023 because she was not a client of a "minority-owned" bank or credit union.

8. Defendant Citigroup Inc. d/b/a Citibank ("Citigroup") is a multinational investment bank and financial services corporation headquartered in New York City, New York, and incorporated

in Delaware. Citigroup is one of the largest investment banks in the world, boasting over $2 trillion in total assets and a net annual income of over $9 billion in 2023.

9. Defendant Citibank, N.A. ("Citibank") is a subsidiary of Citigroup headquartered in New York City, New York, and incorporated in Delaware. Like its parent, Citibank is one of the largest institutions of its kind in the world, boasting over 2,000 branches spread across the United States, Mexico, and over a dozen other countries. Citibank's 654 branch locations in the United States are concentrated in major cities, including Ft. Lauderdale, Miami, New York, Chicago, Los Angeles, San Francisco, and Washington, D.C.

## JURISDICTION & VENUE

10. This Court has federal question subject matter jurisdiction pursuant to 42 U.S.C. §1981 and supplemental jurisdiction over Plaintiffs' state law claim pursuant to 42 U.S.C. §1367.

11. Venue is proper in this Court under 28 U.S.C. §1391 because a substantial part of the events giving rise to these claims occurred in this District.

## FACTUAL ALLEGATIONS

**I.  Citi's racially discriminatory ATM program**

12. Like most banks, Citi charges customers an out-of-network fee when they use Citi's ATMs to withdraw cash from a financial institution outside of Citi's ATM network. But unlike other banks, Citi imposes this fee only when a customer withdraws money from a financial institution owned by people of the wrong race.

13. On July 14, 2016, Citi announced a pilot program called the "Citi® ATM Community Network" (hereinafter "Policy"). Under this Policy, Citi waives all ATM fees at Citi branch offices for customers from minority-owned banks and credit unions. But Citi continues to charge ATM fees to customers from other banks.

14. The express goal of the Policy was discriminatory. It was meant to provide cheaper access to ATMs for customers who do business with banks owned by members of select races.

15. Financial motivations are behind Citi's decision to adopt and continue the Policy. For example, Citi has frequently and publicly highlighted the Policy's race-based nature, and it has received positive press as a result. That type of press is extremely valuable to companies like Citi because many consumers will become customers of companies like Citi *because* of their racially discriminatory policies.

16. Citi has also featured the Policy prominently in its communications with investors. That decision has made good business sense too. In June 2020, for example, Citi's second-largest shareholder announced its intention to invest in companies that implement policies like Citi's decision to implement racially discriminatory ATM fees. Implementing and maintaining the Policy has helped ensure that Citi did not lose investors like that one.

17. The policy has also corresponded to the rise of corporate Environmental and Social Governance ("ESG") ratings, which report on, among other things, a corporation's commitment to policies like Citi's. As one of the world's largest consulting firms noted, "most investors," including the "largest institutional investors," "use ESG ratings in their investment decisions" and a "bad [ESG] rating … can mean that a company is delisted or that the share is priced at a discount to the closest peers." KPMG, *Why is your ESG rating important?*, KPMG.com (accessed Apr. 15, 2024), https://perma.cc/RWC9-43H6. The Policy thus helps Citi avoid any adverse economic effects that come from a poor ESG rating.

18. Citi has no intention of ending the Policy and losing its corresponding economic benefits. In fact, Citi announced as recently as 2022 that it will continue expanding the Policy wherever possible.

**II.     Citi's Policy violates federal and state law.**

    **A.     The Policy violates 42 U.S.C. §1981.**

19.    Courts have noted the "subtle, pervasive, and essentially irremediable nature of racial discrimination" for good reasons. *Gresham*, 730 F.2d at 1424. "[I]t demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *SFFA*, 600 U.S. at 221. This case is no different. By charging its customers, including Plaintiffs (*supra* ¶¶6-7), different prices based on race, the Policy violates both federal and state law.

20.    The Civil Rights Act of 1866 provides that persons of all races "have the same right … to make and enforce contracts," which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(a)-(b).

21.    This broad language "covers *all* contracts" and "embrace[s] all aspects of the contractual relationship." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 303–04 (1994). The statute thus bars a defendant from "charg[ing] a higher price on account of … race." *Williams-Ellis v. Mario Tricoci Hair Salons & Day Spas*, No. 05 C 5030, 2007 WL 3232490, at *4 (N.D. Ill. Nov. 1, 2007).

22.    It is also well established that §1981 targets all racial discrimination in contracting, irrespective of which races are favored or disfavored. *McDonald*, 427 U.S. at 295 (holding that white employees could bring discrimination claims under §1981 because "by its broad terms," §1981 "proscribe[s] discrimination [in contracting] against, or in favor of, any race" (emphasis added)); *accord, e.g., Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 258 (4th Cir. 2001) ("It is … well established that both whites and members of racial minorities may sue for violations of § 1981").

23.    Federal courts have also long held that §1981 supports "cases involving discriminatory action taken directly against a [plaintiff] because of the [plaintiff's] relationship to, association with, or advocacy of" individuals of a race disfavored by the defendant. *Bilello v. Kum & Go, LLC*, 374 F.3d

5

656, 660 (8th Cir. 2004) (collecting cases); *see also Parr*, 791 F.2d at 890. For example, a §1981 claim lies when the defendant "has taken action against [the plaintiff] because" of the race of those the plaintiff "contracts with." *Symington*, 51 F.3d at 1488.

24. It is irrelevant whether Citi's Policy resulted from racial animus towards any particular group. Federal courts have repeatedly affirmed that "liability for intentional discrimination under § 1981 requires only that decisions be premised on race, not that decisions be motivated by invidious hostility or animus." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 473 (11th Cir. 1999); *see also Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987) (holding that union leaders' racially disparate treatment of members violated §1981 "regardless of whether, as a subjective matter, its leaders were favorably disposed toward minorities") (citations omitted). This is because "racial discrimination is invidious in all contexts." *SFFA*, 600 U.S. at 214 (cleaned up).

25. These rules have clear application here. For years, Citi systematically charged different fees based on skin color. If a bank was "minority owned," then Citi did not charge customers of that bank out-of-network fees for using Citi ATMs. But Citi charged customers of other banks those fees. That Policy violates §1981, and it has harmed each Plaintiff. *See supra* ¶¶6-7.

**B. The Policy violates California's Unruh Civil Rights Act.**

26. The Unruh Civil Rights Act was designed to "'banish[]'" and "'eradicat[e]'" all discrimination "in California business establishments." *White v. Square, Inc.*, 446 P.3d 276, 279 (Cal. 2019) (citations omitted). It "prohibits arbitrary discrimination, both benign and improperly intentioned, against minorities or majorities," *Park Redlands Covenant Control Comm. v. Simon*, 226 Cal. Rptr. 199 (Cal. Ct. App. 1986), including "discrimination in the form of pricing differentials," *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1050 (9th Cir. 2000).

27. It makes no difference in how the company frames its "pricing differential." *Id.* Whether it charges one race more, or gives one race a discount, the company equally violates Unruh.

*Cf. Koire v. Metro Car Wash*, 707 P.2d 195, 200 (Cal. 1985) ("The plaintiff was adversely affected by the price discount. His female peers were admitted to the bar free, while he had to pay.").

28. Unruh has also long prohibited discriminating against a person of any race for doing business with those of a disfavored race. *See* Cal. Civ. Code §51(e)(6) (defining protected characteristics to "include[] … that the person is associated with a person who has … any particular characteristic"). That is because Unruh has "been liberally applied to all types of business activities." *Jackson v. Superior Ct.*, 36 Cal. Rptr. 2d 207 (Cal. Ct. App. 1994). In fact, the statute expressly prohibits discriminating against a person for entering any type of contract or business relationship. Cal. Civ. Code §51.5(a). Being a "customer[]" or a "business associate[]" is protected under Unruh. *Id.*; *see Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1126–27 (9th Cir. 2008) (Unruh prohibits "discrimination in 'relationships similar to the proprietor/customer relationship'").

29. Even before Unruh was amended to expressly prohibit such discrimination, the Supreme Court of California held that Unruh prohibited a landlord from discriminating against a white tenant because that tenant sublet to a Black renter. *Winchell v. English*, 133 Cal. Rptr. 20 (Cal. Ct. App. 1976). And more recently, the California Court of Appeal held that Unruh prohibited a finance company from paying car dealerships less when the dealerships entered sales contracts with women rather than men. *See Dep't of Fair Emp. & Hous. v. M&N Fin. Corp.*, 284 Cal. Rptr. 3d 477 (Cal. Ct. App. 2021).

30. All of this distills to a simple rule: anyone who is "subjected to … [a] defendant's [race]-based price differential … must be considered persons denied the rights provided in" Unruh. *Angelucci v. Century Supper Club*, 158 P.3d 718, 727 (Cal. 2007) (cleaned up). Like with §1981, that rule has clear application here, and Citi violated it by charging out-of-network fees.

## CLASS ACTION ALLEGATIONS

31. Plaintiffs incorporate all prior allegations.

32. Plaintiffs brings this action individually and on behalf of all other persons similarly situated ("the Classes") pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3).

33. Plaintiffs propose the following Class definitions and seek certification of such Classes, subject to amendment based on information obtained through discovery:

> **National Class (§1981):** All persons in the United States who paid ATM fees at a Citi branch location in the last four years.
>
> **California Subclass (Unruh Civil Rights Act):** All persons in California who paid ATM fees at a Citi branch location in the last three years.

34. Excluded from the Classes are Citi's officers, directors, employees, and agents; any entity in which Citi has a controlling interest; and affiliates, legal representatives, attorneys, successors, heirs, and assigns of Citi. Excluded also from the Classes are members of the judiciary to whom this case is assigned, their families and members of their staff.

35. Plaintiffs reserve the right to amend the definitions of the Classes or add a class or subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

36. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claims for each Class Member.

37. This action satisfies the requirements for a class action under Rule 23, including requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority.

38. <u>Numerosity</u>. The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, the Classes are numerous, consisting of at least thousands of customers that Citibank charged ATM fees under its racially discriminatory Program.

39. <u>Commonality and Predominance</u>. There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

40. Whether under the Policy Citi charged ATM fees based on the race of the owner of the bank or credit union its customers did business with;

41. When Citi became aware of the illegality of the Policy;

42. How many times, and from how many customers, Citi charged ATM fees, beginning on July 14, 2016;

43. Whether Citi's racially discriminatory actions violate 42 U.S.C. §1981;

44. Whether Citi's racially discriminatory actions violate the Unruh Civil Rights Act;

45. Whether Plaintiffs and Class Members are entitled to actual, compensatory, statutory, or punitive damages, statutory penalties, or declaratory or injunctive relief, as allowable by federal or state law,

46. <u>Typicality</u>. The claims or defenses of Plaintiffs are typical of the claims or defenses of the proposed Classes because Plaintiffs' claims are based upon the same legal theories and violations of law. Plaintiffs' grievances, like the proposed Class Members' grievances, all arise out of the same business practices and course of conduct by Citi.

47. <u>Adequacy</u>. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the members of the Classes. Plaintiffs' counsel are competent and experienced in litigating civil rights cases and mass actions.

48. <u>Predominance</u>. Citi has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' were charged the same discriminatory fees at Citi ATMs. The common issues arising from Citi's conduct affecting the Class Members set

out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

49. <u>Superiority</u>. A class action is a superior method for the fair and efficient adjudication of this case because class proceedings are superior to all other available methods for fair and efficient adjudication of this case, and joinder of the Class Members is otherwise impracticable. Class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious and wasteful litigation for many reasons, including the following:

50. It would be a substantial hardship for most individual members of the Classes to prosecute individual actions, many of whom are not in a position to incur the expense of retaining their own counsel to prosecute individual actions.

51. The litigation of individual cases would create inconsistent results, with some members of the Classes recovering but not others, and some courts declaring that Citi is liable for discrimination but potentially not others, establishing incompatible standards of conduct for Defendants. By contrast, if this Court adjudicates Citi's liability for all the members of the Classes, it can resolve their claims all at once, without inconsistent or varying results, thus achieving global relief and judicial efficiency.

52. A class action will permit an orderly and expeditious administration of the Class claims, fostering economies of time, effort, and expense. If the Class Members are forced to bring individual suits, the transactional costs, including those incurred by Citi, will increase dramatically, and the courts will be clogged with a multiplicity of lawsuits concerning the very same subject matter, with identical fact patterns and legal issues.

53. This lawsuit presents no difficulties that would impede its management by the Court as a class action. The class certification issues can be easily determined because the Classes include only customers who were charged ATM fees at Citi branch locations, the legal and factual issues are narrow and easily defined, and the Class membership is limited. The Classes do not contain so many

persons that it would make the Class notice procedures unworkable or overly expensive. And the identity of the Class Members can be identified from Citi's records, such that direct notice to the Class Members would be appropriate.

54. In addition, Citi has acted on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## CLAIMS FOR RELIEF

### COUNT I
### Civil Rights Act of 1866, 42 U.S.C. §1981
### (Associational Discrimination)

55. Plaintiffs incorporate all prior allegations.

56. Plaintiffs bring this claim on behalf of themselves and all members of the Classes.

57. Federal civil rights law provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(a)-(b).

58. Citi created the Policy which waived ATM fees for certain customers based on the race of the owners of their bank or credit union, while continuing to impose ATM fees for all other customers who were not clients of a bank or credit union owned by members of Citi's favored racial groups.

59. Plaintiffs and Class Members used a Citi branch ATM on or after July 14, 2016, when Citi launched the Policy, and thus paid ATM fees because they banked at a non-"minority-owned" institution.

11

60. By imposing ATM fees for one set of customers but not for others, Citi's Policy denied Plaintiffs and Class Members the enjoyment of "all benefits, privileged, terms and conditions of the contractual relationship" between Citi and users of its ATMs. 42 U.S.C. §1981.

## COUNT II
### California Unruh Civil Rights Act, Cal. Civ. Code §§51-52
### (Associational Discrimination)

61. Plaintiffs incorporate all prior allegations.

62. Plaintiffs bring this claim on behalf of themselves and all members of the Classes.

63. Unruh provides, "No business establishment of any kind whatsoever shall discriminate against … any person in this state on account of [race], or of the person's … business associates … because the person is perceived to have [a particular race], or because the person is associated with a person who has, or is perceived to have, [a particular race]." Cal. Civ. Code §51.5(a); *see also* Cal. Civ. Code §51(b). The term "race" "includes a perception that the person has any particular [race] or that the person is associated with a person who has, or is perceived to have, any particular [race]." *Id.* §51(e)(6).

64. Citi created the Policy to waive ATM fees for customers based on the race of the owners of their bank or credit union, while continuing to charge those same fees for all other customers who were not clients of a bank or credit union owned by members of Citi's favored racial groups.

65. By imposing ATM fees for one set of customers but not for others, Citi's Policy "subjected" Plaintiffs and Class Members to a "[race]-based price differential," in violation of Unruh. *Angelucci*, 158 P.3d at 727.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs ask this Court to enter judgment in their favor and provide the following relief against Defendants, jointly and separately:

66. An Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the Classes;

67. Declaratory relief declaring the Policy violates federal and California law;

68. Injunctive relief prohibiting Defendants from advertising or implementing the Policy;

69. Equitable relief requiring restitution and disgorgement of ATM fees wrongly collected pursuant to the Policy;

70. Actual, compensatory, statutory, and punitive damages, and statutory damages, in an amount to be determined, as allowable by federal and California law;

71. Attorneys' fees, costs, and any other expenses;

72. Pre- and post-judgment interest on any amounts awarded;

73. All other relief to which Plaintiffs and the Classes are entitled.

74. Such other and further relief this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully request leave to amend this Complaint to conform to the evidence if such amendment is needed for trial.

|  |  |
|---|---|
| Dated: May 16, 2024 | Respectfully submitted,<br><br>/s/ *Daniel Shapiro*<br>Daniel J. Shapiro (Fla. Bar No. 1011108)<br>Bryan Weir (*pro hac vice* forthcoming)<br>Brandon M. Haase\* (*pro hac vice* forthcoming)<br>CONSOVOY MCCARTHY PLLC<br>1600 Wilson Boulevard, Suite 700<br>Arlington, VA 22209<br>(703) 243-9423<br>daniel@consovoymccarthy.com<br>bryan@consovoymccarthy.com<br>brandon@consovoymccarthy.com<br><br>\* Supervised by principals of the firm admitted to practice in Virginia<br><br>*Counsel for Plaintiffs* |