UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:24-cv-60834-Singhal

WERNER JACK BECKER, DANA
GUIDA, individually and on behalf of
others similarly situated,

    Plaintiffs,

v.

CITIGROUP INC. d/b/a CITIBANK and
CITIBANK, N.A.,

    Defendants.

**DEFENDANTS' MOTION TO STAY DISCOVERY
PENDING RULING ON MOTION TO DISMISS**

Defendants Citigroup Inc. ("Citigroup") and Citibank, N.A. ("Citibank") respectfully move this Court for a stay of discovery pending adjudication of their Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) [ECF No. 29] (the "Motion to Dismiss" or "MTD"), filed on July 10, 2024.

**INTRODUCTION**

As more fully explained in Citibank's Motion to Dismiss, ECF 29, Plaintiffs lack Article III standing to bring this action because they cannot show an injury that is traceable to Citibank's ATM Community Network program, or redressable by this Court. The "Network" is premised on a series of bilateral agreements between Citibank and other financial institutions. The Network does not waive fees for individuals (like these Plaintiffs) *unless* the institution where they bank is both interested in enrolling, and willing to enter into (and actually does enter) a Network Agreement with Citibank, taking on the reciprocal contractual obligations set forth therein.

Importantly, as set forth in the form of the Network Agreement, filed with the declaration supporting Citibank's Motion to Dismiss [ECF 29-1], a contracting bank is obliged to accept several conditions of participation in the Network, such as waiving the institution's own out-of-network ATM fees and engaging in certain marketing efforts.

In short, *no matter what* their banks' eligibility for the Network, Plaintiffs cannot claim they were injured as a result of the ATM Community Network without showing that their institutions were interested in and willing to join the Network and would accept its mandatory terms.  Here, Plaintiffs have not pleaded, and cannot plead, any such facts about their institutions—non-parties whose decision-making Plaintiffs do not control.  So Plaintiffs cannot satisfy the Eleventh Circuit's longstanding "able and ready" standard for standing in cases under 42 U.S.C. § 1981.  *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 772–75 (11th Cir. 2024).  If the institutions where Plaintiffs bank are not "able and ready" to enter into Network Agreements, then Plaintiffs are not themselves "able and ready" to access a waiver conditioned on those agreements.

As a result, the Court lacks subject matter jurisdiction in this case, and the case should proceed no further, including into discovery.  Citibank's Rule 12(b)(1) motion has introduced *only two facts*:  (1) the terms of the contract with Network Institutions (further supported by an executed contract under seal); (2) the list of institutions participating in the Network and whether or not they are recognized (per public, government records) as a Minority Depository Institution.  Absent any dispute on these two facts, all the remaining key facts are outside Citibank's knowledge:  where Plaintiffs bank; those institutions' owners; whether those institutions would be interested in entering the Network; and whether those institutions would accept the terms of the Network Agreement.  To the extent facts about those institutions' willingness to join the Network are *also*

2

unknown to Plaintiffs, that defeats standing, and certainly does not warrant any discovery from Citibank.

Even if Plaintiffs had standing, their claims would be subject to dismissal on multiple independent grounds for failure to state a claim, as further explained in Citibank's Motion to Dismiss. Discovery—particularly discovery into the merits and alleged damages of the sort Plaintiffs have recently propounded—is inappropriate until the Court has determined whether it even has subject matter jurisdiction and whether the claims can otherwise survive the dispositive Motion to Dismiss. *See Dry Tech 24/7, Inc. v. The Clorox Company*, No. 22-cv-61291, 2022 WL 20834472, at *1 (S.D. Fla. Dec. 2, 2022) (Singhal, J.) (granting stay of discovery and noting that the Eleventh Circuit has consistently "expressed its concern regarding the burdens and costs of conducting discovery before potentially dispositive motions are resolved"); *see also Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308 (11th Cir. 2020); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997).

## BACKGROUND

**Plaintiffs' Allegations**

Plaintiffs Werner Jack Becker and Dana Guida ("Plaintiffs") filed this action on May 17, 2024, on behalf of a sprawling nationwide putative class. *See generally* Compl. Their claims stem from complaints regarding the "ATM Community Network" program. *Id.* ¶ 13. The ATM Community Network program was, per the Complaint, announced in a press release on July 14, 2016. *Id.* The press release explains that the Network consists of participating financial

institutions who choose to join the program so that their customers will have free access to Citibank's branch ATMs in select locations in the United States.[1]

Plaintiffs allege that the ATM Community Network program "does not charge out-of-network ATM fees to people who bank at financial institutions that are 'minority owned.'" *Id.* ¶¶ 3, 6–7, 13. Plaintiffs allege that the program does charge ATM fees to people who bank at other financial institutions, *id.* ¶¶ 3, 13, and that they were charged out-of-network fees at Citibank ATMs in South Florida in June and July of 2023. *Id.* ¶¶ 6–7. Plaintiffs purport to assert claims under 42 U.S.C. § 1981 and the California-Unruh Act. *Id.* ¶¶ 5, 30.

**The Pending Motion to Dismiss**

On July 10, 2024, Citibank filed its Motion to Dismiss on the basis that (1) the Court lacks subject matter jurisdiction over the case because Plaintiffs lack Article III standing to assert the claims, and (2) Plaintiffs fail to assert any viable legal theories or necessary facts to state a claim on their Section 1981 or Unruh Act claims. As set forth in Citibank's Motion to Dismiss, Plaintiffs cannot establish that they are "able and ready" to participate in the ATM Community Network program, as would be required to establish standing, because only financial institutions (not individuals) may enter the program, and Plaintiffs cannot allege that the financial institutions at which they bank have either an interest entering the program or a willingness to undertake the reciprocal contractual obligations required of participating financial institutions. MTD at 7–14.

---

[1] *See* Press Release, Citigroup Inc., Citi Introduces Citi ATM Community Network (July 14, 2016), https://www.citigroup.com/global/news/press-release/2016/citi-introduces-citi-atm-community-network-providing-surcharge-free-atm-access-to-partner-credit-union-and-minority-owned-bank-customers ("The Citi ATM Community Network will mean participating organizations have free access to roughly 2,400 branch ATMs in Citi's markets in the U.S.") (last visited July 9, 2024).

In support of its Motion to Dismiss, Citibank filed the Network Agreement that it requires every participating institution in the ATM Community Network to sign. *Id.*, Ex. 1, Exs. A, B. As set forth in the accompanying Declaration of Marco Chavarin, a participating institution "must agree to enter into the ATM Network Agreement contract and its terms in order to become a part of the Network, and obtain any Network benefits for its customers accounts." *Id.*, Ex. 1 ¶ 5. Further, any institution refusing to accept the terms of the Network Agreement "would not be admitted to the Citibank ATM Community Network, and would therefore not be eligible to have ATM fees waived." *Id.*, Ex. 1 ¶ 8. These facts are uncontroverted in the Complaint or otherwise by Plaintiffs and dispositive of the Court's inquiry on standing.

Further, Plaintiffs fail to state claims under Section 1981 or Unruh on various grounds. Among these are that Plaintiffs cannot allege discrimination based on their own race, which is required even under the associational discrimination theory they posit, MTD at 15–19, and they cannot allege any discriminatory "contract" that they can invoke. *Id.* at 21–26. Finally, their supposed Unruh claim is subject to the further flaw that Unruh does not apply extraterritorially outside of California, and these Plaintiffs solely allege Florida-based conduct. *Id.* at 26–28.

**Plaintiffs' Discovery Requests**

On the same day that Defendants filed their Motion to Dismiss, Plaintiffs served requests for production and interrogatories on Citibank seeking discovery concerning a putative class "of at least thousands of customers," Compl. ¶ 38, and spanning a nearly decade-long period, of January 1, 2015, to the present. *See* Ex. 1, Requests for Production ¶ 13; Ex. 2, Interrogatories ¶ 5.[2] These seek, among other things, class-wide information about the merits, and purported damages. *See generally*, Exs. 1, 2. Plaintiffs also seek extensive document productions, including

---

[2] Citibank has not propounded any discovery requests.

5

on issues relevant to the Rule 23 class-certification decision, and sweeping merits discovery dating to 2015 involving, among other matters, "the design, planning, implementation and, and maintenance of the Policy," as well as documents disclosed to Citibank's "shareholders, employees, regulators, government agencies, legislative bodies, consumers, and the public." Ex. 1 ¶¶ 1, 2, 4. As for damages, Plaintiffs seek extensive discovery with requests such as to "[d]escribe in Detail how many Fees Citi has charged each of the last four calendar or fiscal years at Citibank Branches, separated by year and U.S. state," Ex. 2 ¶ 1, and document productions showing "how many times Citi waived Fees under the [ATM Community Network] at each Citibank Branch" and "the number of distinct persons who were charged Fees at each Citibank Branch" since May 17, 2020, Ex. 1 ¶¶ 6–7. Such information would be nationwide in scope and involve hundreds or potentially thousands of Citibank branches.

**The Parties Have Met and Conferred**

Over the week of July 15, counsel for the parties conferred as required by Local Rule 7.1(a)(3) over Citibank's proposal to stay discovery. Counsel for Plaintiffs informed undersigned counsel that Plaintiffs oppose a stay. When undersigned counsel inquired whether Plaintiffs would, as a compromise, agree to stay all discovery except jurisdictional discovery, Plaintiffs rejected this compromise approach, suggesting instead that class discovery should proceed immediately followed by merits discovery. Notably, Plaintiffs have not sought to postpone their deadline to respond to the Motion to Dismiss in order to incorporate any information learned through discovery into their response.

**ARGUMENT**

"The District Court has broad discretion to stay proceedings as incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001). Discretion in favor of a stay should be exercised when a party demonstrates "good cause and reasonableness." *Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-22691-CIV, 2014 WL 12528362, at *1 (S.D. Fla. Dec. 10, 2014) (citing *Varga v. Palm Beach Cap. Mgmt., LLC*, No. 09-CV-82398, 2010 WL 8510622, at *1 (S.D. Fla. Sept. 3, 2010)).

When determining whether good cause exists to grant a stay, Courts often "tak[e] a 'preliminary peek' [at the pending motion] to see if [the] motion is meritorious and truly case dispositive." *Chevaldina v. Katz*, No. 17-22225-CIV, 2017 WL 6372620, at *3 (S.D. Fla. Aug. 28, 2017) (citation omitted). A stay of discovery is particularly appropriate where, as here, the motion goes to the Court's jurisdiction to hear the case at all. *See, e.g.*, *Lawrence v. Governor of Georgia*, 721 F. App'x 862, 864–65 (11th Cir. 2018) (affirming stay of discovery based on "court's likely lack of subject matter jurisdiction" and other issues "apparent from the face of the complaint"); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2021 WL 10428229, at *3 (S.D. Fla. Oct. 9, 2021) ("[W]hen faced with legitimate jurisdictional and standing challenges like those present in Defendants' Motion to Dismiss, discovery should not commence until such challenges are resolved."). Accordingly, courts in this district have found good cause to grant a stay of discovery when defendants have alleged jurisdictional challenges in a motion to dismiss.[3] A motion to stay discovery is also supported by good cause if granting the motion to

---

[3] *See, e.g.*, *Lewis v. Mercedes-Benz USA, LLC*, No. 19-81220, 2020 WL 4923640, at *3 (S.D. Fla. Mar. 25, 2020) ("[W]hen faced with legitimate jurisdictional challenges . . . discovery should not commence until such challenges are resolved."); *see also Rodriguez v. Imperial Brands*

dismiss is likely to substantially narrow the scope of claims and potential defendants. *See, e.g.*, *Lewis*, 2020 WL 4923640, at *2 (granting motion to stay because the motion to dismiss, even if granted in part, would "substantially impact the viability of claims against one or more Defendants and drastically alter the scope of discovery"); *In re Mednax Services*, 2021 WL 10428229, at *2 (same).

When determining whether reasonableness exists to grant a stay, the Court balances "the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Khan v. Rundle*, No. 05-23123, 2006 WL 8433502, at *1 (S.D. Fla. July 17, 2006). Courts may also find a stay is reasonable when the resolution of the pending motion to dismiss will likely alter discovery's scope. *See Gill-Samuel v. Nova Biomed. Corp.*, No. 13-62591, 2014 WL 11762719, at *1 (S.D. Fla. Feb. 18, 2014) (granting discovery stay in a putative class action where discovery would place a heavy burden on defendants).

Here, the request for a stay is not only supported by good cause, it also is reasonable.

*First*, good cause for a stay of discovery exists, as a preliminary peek at the Motion to Dismiss establishes that Citibank will likely succeed in dismissing Plaintiffs' Complaint in whole. As explained further in Citibank's Motion to Dismiss, Plaintiffs do not and cannot allege a redressable injury-in-fact traceable to Citibank's ATM Community Network program necessary to have Article III standing to pursue its claims under Section 1981. MTD at 1–14. Specifically, Plaintiffs cannot allege that they are "able and ready" to join the Citibank ATM Community Network program as required under Article III standing because they, as natural persons, cannot

---

*plc*, No. 20-23287, 2022 WL 2231504, at *3–4 (S.D. Fla. May 25, 2022); *Gillier v. Servicios Agecom, LLC*, No. 17-23155, 2017 WL 6994217, at *1–2 (S.D. Fla. Nov. 27, 2017); *McCullough v. Royal Carib. Cruises, Ltd.*, No. 16-20194, 2017 WL 6372619, at *1 (S.D. Fla. Jan. 11, 2017) (staying merits-based discovery given defendants' motion to dismiss for lack of personal jurisdiction).

apply for the program on their own.  *Id.*  Nor can Plaintiffs establish that the financial institutions where they bank are "able and ready" to join the program or would have any obstacle in joining the program.  *Id.* at 8–12.  Given this incurable standing deficiency, Citibank respectfully submits that the Motion to Dismiss is "meritorious and truly case dispositive."  *Chevaldina,* 2017 WL 6372620, at *3; *see also Lewis*, 2020 WL 4923640, at *2.  And Plaintiffs' standing is further undermined because their theory of traceability—that they did not receive a fee waiver because the Network excludes all but minority-owned institutions—is inconsistent with government records on the ownership of Network institutions.  MTD at 7–8, 13–14.  Accordingly, because the Court is "faced with legitimate jurisdictional challenges," good cause exists and "discovery should not commence until such challenges are resolved."  *Lewis*, 2020 WL 4923640, at *3; *see also Rodriguez*, 2022 WL 2231504, at *3–4 ; *Gillier*, 2017 WL 6994217, at *1–2; *McCullough*, 2017 WL 6372619, at *1.

　　　　Setting aside jurisdictional issues, and as detailed in the Motion to Dismiss, Plaintiffs further fail to state claims (1) under Section 1981 because Plaintiffs do not plead discrimination based on their own race, or any discriminatory "contract" they can invoke, and (2) under the California Unruh Act, both because Plaintiffs only allege Florida-based conduct, and for the reasons Plaintiffs' Section 1981 claim fails.  *See* MTD at 26–28.  It is well-established that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief"—such as Citibank's—"should . . . be resolved before discovery begins."  *Heikka v. Safeco Ins. Co. of Illinois*, No. 21-CV-61885, 2021 WL 10256974, at *1 (S.D. Fla. Nov. 1, 2021) (Singhal, J.) (quoting *Chudasama*, 123 F.3d at 1367).  The Court should thus grant this Motion and stay discovery pending resolution of the Motion to Dismiss that has the potential to end the case.  *See SandP Sols., Inc. v. The Silver Logic, LLC*, No. 21-cv-80949, 2021

WL 9347080, at *2 (S.D. Fla. Nov. 1, 2021) (noting that "a discovery stay is usually granted when a motion will be dispositive of the entire case"); *Nuwer v. FCA US LLC*, No. 20-cv-60432, 2020 WL 574875, at *1–2 (S.D. Fla June 25, 2020) (Singhal, J.) (staying discovery because the Court "agree[d] with Defendants' assessment that the motions, if granted, would substantially reduce the scope of the claims").

*Second*, the requested stay is reasonable as the potential harm to the parties resulting from the stay is outweighed by the potential costs and burdens the parties would incur if discovery proceeds. Indeed, a cursory review of the discovery requests Plaintiffs have already issued to Citibank reveals the significant cost and burden that would be required to provide the requested information. By way of example, Plaintiffs seek extensive discovery on the merits and class-wide damages. *See supra* at 5–6; Exs. 1, 2. Providing such discovery would require countless hours and high costs in collecting, processing, reviewing, and producing a wide array of documents relating to this action (which is likely to be dismissed for the reasons previously stated). Meanwhile, this significant burden does not yet account for the affirmative discovery Citibank would ultimately need to serve on Plaintiffs, and the burden and costs Plaintiffs will incur in providing such discovery.

On the other hand, none of the parties will suffer harm or prejudice from a stay of the proceedings pending the Court's decision on the Motion to Dismiss. Plaintiffs' propounded discovery is irrelevant to standing, and Plaintiffs need no discovery whatsoever from Citibank to either determine the financial institutions where they bank (unknown to Citibank, and undisclosed in the Complaint) or to show whether those financial institutions are "able and ready" to join the ATM Community Network. The Network Agreements filed by Citibank, given their significant reciprocal obligations, are dispositive on this point. Without a showing that Plaintiffs' financial

institutions would sign the required Network Agreements, Plaintiffs cannot establish standing, and no discovery from Citibank could demonstrate that Plaintiffs' unidentified, non-party financial institutions would sign such Network Agreements.

Given the likelihood of this action being dismissed and the inevitable burdens of discovery, a stay will save costs, "promote judicial economy," and "reduce confusion and prejudice" while the Court considers the pending Motion to Dismiss. *Heikka*, 2021 WL 10256974, at *1; *see also Dry Tech 24/7, Inc.*, 2022 WL 20834472, at *1 (Singhal, J.) ("The Court believes that the interests of justice and economy weigh in favor of granting a stay of discovery."); *SandP Sols., Inc.*, 2021 WL 9347080, at *2 ("A discovery stay therefore will 'avoid a massive waste of judicial and private resources.'") (quoting *Rivas v. Bank of N.Y. Mellon*, 676 F. App'x 926, 932 (11th Cir. 2017))). Moreover, given the Court's efficient and expeditious control of its docket, Citibank anticipates any potential stay will be brief. Once the Court rules on the Motion to Dismiss, and in the unlikely event that any of Plaintiffs' claims survive, the Court can reset appropriate discovery deadlines to afford Plaintiffs an ample opportunity to engage in appropriate discovery. *See Pierce*, 2014 WL 12528362, at *1 ("[T]he Court finds that a brief stay in discovery would not prejudice Plaintiff and should the case proceed, Plaintiff will have ample opportunity to conduct discovery.").

Thus, considering that the dispositive Motion to Dismiss is pending and meritorious as to lack of standing and a failure to state a claim, the parties will not be harmed with a brief stay of all discovery, whereas the parties would incur significant burdens and costs if required to proceed class, merits, and/or damages discovery now. This Motion should be granted.

**WHEREFORE**, for the foregoing reasons, Citibank respectfully requests that the Court stay discovery in this action pending the Court's decision on the Motion to Dismiss and reset all discovery and other deadlines in this case if necessary only if some portion of the Complaint survives dismissal.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), Citibank certify they have conferred with counsel for Plaintiffs, who oppose the Motion as more fully set forth herein. *See supra* at 6.

Dated: July 18, 2024                  Respectfully submitted,

/s/ *Eliot Pedrosa*
Eliot Pedrosa
Florida Bar No. 182443
epedrosa@jonesday.com
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 714-9700
Facsimile: (305) 714-9799

Jayant W. Tambe (*admitted pro hac vice*)
Alexander V. Maugeri (*admitted pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
amaugeri@jonesday.com
jtambe@jonesday.com

Christopher Pagliarella (*admitted pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
cpagliarella@jonesday.com

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 18, 2024, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

*/s/ Eliot Pedrosa*
Eliot Pedrosa

**Attorney for Defendants**