UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:24-cv-60834-Singhal

WERNER JACK BECKER, DANA GUIDA, individually and on behalf of others similarly situated,

        Plaintiffs,

v.

CITIGROUP INC. d/b/a CITIBANK and CITIBANK, N.A.,

        Defendants.

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO STAY DISCOVERY**

**INTRODUCTION**

Rule 15(a)(1)(b) allows a plaintiff to amend his complaint in response to a motion to dismiss. Today, Plaintiffs exercised that right and filed an Amended Complaint. That amendment moots Citi's motion to dismiss, *see, e.g.*, *Khan v. Discovery Fin. Servs., LLC*, 2012 WL 12895547, at *1 (S.D. Fla. July 19, 2012), and that motion was the sole basis for Citi's motion to stay. No doubt, however, Citi will file another motion to dismiss and rely on that future motion to seek a discovery stay. That future motion will not be a basis for a stay.

Motions to stay discovery are disfavored in this district. And to obtain a stay, the moving party bears the burden to show "good cause" and "reasonableness." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997). Citi can't establish good cause because a "preliminary peek" at its motion to dismiss will not show "a strong likelihood that the dismissal motion will be granted and entirely eliminate the need for … discovery." *Ray v. Spirit Airlines, Inc.*, 2012 WL 5471793, at *1 (S.D. Fla. Nov. 9, 2012) (cleaned up). Plaintiffs have raised serious allegations of race discrimination: Citi charged them a fee because they were not, in Citi's words, a "client[] … of a minority-owned bank[] [or] credit union[]." Am. Compl. ¶¶17-19. Citi's primary response to those allegations is to manufacture a jurisdictional challenge to Plaintiffs' standing. The most basic problem with that challenge is it relies on the wrong standing test. Citi wants the test for *prospective* injuries to apply rather that the test for pocketbook injuries that have *already* occurred—the latter test applies here, and it's easily satisfied.

Another problem is this attack on jurisdiction is hopelessly intertwined with the merits of Plaintiffs' claims, requiring application of Rule 12(b)(6)'s more generous standard of review instead of Rule 12(b)(1). Nor do Citi's merits challenges (at 9-10) show "a strong likelihood" that the Court will grant a motion to dismiss. Those challenges touch on closely contested questions

1

about the application of §1981 to associational discrimination claims and how federal courts address subclasses under state law. In short, there is a genuine dispute between the parties that cannot be resolved by a "preliminary peek" at Citi's motion and, therefore, discovery should go forward.

To the extent there was any doubt whether discovery should be stayed, the Amended Complaint should erase it. There are two additions the Amended Complaint makes that warrant mention up front. *First*, the Amended Complaint outlines in more detail how Citi has consistently described its ATM policy in race-based terms from 2016 to today in press releases, articles, and even Congressional testimony. Citi's own public statements show that race is central to the policy's DNA. Citi wants to ward off discovery for as long as it can because, given what Citi has said publicly, their internal communications will reveal far worse conduct.

*Second*, the Amended Complaint again outlines how Citi openly uses the race of bank owners to decide which banks are part of the policy. Those allegations support Plaintiffs' associational discrimination claims that were the subject of Citi's motion to dismiss. The Amended Complaint now outlines how Citi also uses the race of the banks' *customers* to decide which banks are part of the policy. As a result, Citi is waiving ATM fees for those customers because of their perceived race—a benefit it does not provide Plaintiffs or customers of other banks. Based on those allegations, the Amended Complaint adds two additional counts of direct discrimination, one under §1981 and one under California law. All four claims are very likely to survive any future Citi motion to dismiss.

For these reasons and those outlined below, the Court should deny Citi's motion to stay.

## BACKGROUND

**A.     Citi's discriminatory ATM Policy.**

From July 14, 2016, until now, Citi has had an express policy of charging customers different ATM fees based on race under its ATM Community Network program (the "Policy"). Am. Compl. ¶3. Under that Policy, Citi does not charge out-of-network ATM fees to people who bank at financial institutions that are "minority owned." But it does charge those fees to people who bank at other financial institutions. *Id.*

Citi was not shy about the Policy's race-based nature. *Id.* ¶4. In its press release introducing it, Citi explicitly said the goal was to provide "surcharge-free ATM Access" to customers of "minority-owned banks and credit unions." *Id.* ¶16. And Citi continued to characterize the Policy as race-based while the ATM network grew. *Id.* ¶18. In its 2016 "Global Citizenship Report," Citi proudly announced that the Policy "provid[ed] **FREE USE OF CITI'S ATM NETWORK** to over **300,000 CLIENTS** of participating minority-owned banks and credit unions…." ¶17 (emphasis original). Likewise, in its 2017 and 2018 reports, Citi described the Policy as providing "fee-waived access" to "clients of minority-owned banks and credit unions." ¶18.

In 2020, Citi included the Policy as a key component in its "Action for Racial Equity" initiative, which aimed to, in Citi's words, "bring[] together all the capabilities of our institution— our people, our lines of business, our balance sheet, and our philanthropy—like never before to combat the impact of racism in our economy." ¶20. Citi's CFO explained: "We are in the midst of a national reckoning on race, and words are not enough … we are determined to help close the racial wealth gap and help build an anti-racist economy and society." *Id.* Citi explained that the Policy, which "remov[ed] out-of-network fees at Citibank ATMs for customers of participating minority-owned banks and community development credit unions," was part of its "Goal #1" of

"expand[ing] banking and access to credit in communities of color." ¶21. Citi again featured the Policy in its September 2022 progress report on its Action for Racial Equity initiative, noting again that it had "remov[ed] out-of-network fees at Citibank ATMs for customers of participating minority-owned banks and community development credit unions." *Id.*

In November 2021, Citi featured the Policy in a brochure advertising its relationships with minority-owned banks. ¶24. Citi cited the Policy as aimed to "strengthen[] the economic trajectory of minority banking institutions and the communities they serve." *Id.* The brochure featured another quote from its CFO: "'As we continue to do the work to become an anti-racist institution and drive finance toward a more equitable and inclusive industry, we will do our part by engaging firms that reinvest into the Black community.'" *Id.*

An independent auditor evaluated Citi's Action for Racial Equity initiative and released its findings in December 2022. The auditors determined the Policy has achieved one of its intended effects. ¶26. They reported that minority-owned bank representatives said the Policy "'change[d] the whole dynamic' of [their] business because it resulted in more individuals banking with" their institutions. *Id.*

Boosting minority-owned banks, however, is not the only reason that Citi implemented the policy. Citi includes certain minority-owned banks, Community Development Credit Unions (CDCUs), and Community Development Financial Intuitions (CDFIs) in the Policy because Citi perceives those banks' customers to be minorities. ¶¶27-36 (outlining Citi's criteria). For example, Citi stated in 2017 that the Policy's purpose was to target minorities. "[S]tudies show," according to Citi, "that low-income communities of color still predominantly use cash for transactions, making ATM access and fees especially important. This offered Citi, with our large ATM network, an opportunity to leverage our resources to improve banking accessibility for all." ¶32. In 2020,

Citi said the Policy and its inclusion of CDCUs was part of a broader goal to "expand banking and access to credit in communities of color." ¶33. And in 2021, Citi's CEO testified before Congress that "CDFIs level the playing field for underserved communities and populations, *especially communities of color*." ¶34. She also testified in 2022 that "[w]e are expanding banking services in *communities of color* by extending surcharge-free access to Citibank ATMs through our Citi ATM Community Network of 32 community banks, 16 of which are [minority-owned]." ¶34. The other 16 banks at the time, in other words, are CDCUs and CDFIs that are part of the program because they are in "communities of color." *Id.*

### B.  Plaintiffs' lawsuit challenging Citi's racially discriminatory Policy.

Plaintiffs Werner Jack Becker and Dana Guida filed this class action lawsuit on May 17, 2024. Dkt. 1. Plaintiffs alleged two claims—one under 42 U.S.C. §1981 and one under California's Unruh Civil Rights Act on behalf of a California subclass—asserting that the Policy constitutes unlawful associational discrimination. That is, Citi discriminated against Plaintiffs because they do business with banks that are not minority-owned and otherwise could not participate in the Policy.

On June 5, the Court ordered the parties *sua sponte* to meet and confer and file a joint scheduling report as required by Local Rule 16.1. Dkt. 18. The Court ordered the parties to address whether the case should be on an expedited, standard, or complex track, the latter of which requires the case to complete discovery within 365 days from the date of the scheduling order. Dkt. 18 at 1-2. In the parties' Joint Scheduling Report, Citi previewed that it likely would file a Rule 12 motion and seek a discovery stay while that motion was pending. Dkt. 20, at 2. Plaintiffs explained that they were "amenable to pursuing only class-based discovery first while the Court considers

5

Defendants' Rule 12 motion (should Defendants file one)." *Id*. The parties proposed that discovery close on June 25, 2025, and trial begin in October 2025.

Despite Citi's reservations about discovery and its impending motion to dismiss, the Court ordered a more expedited schedule than the parties proposed. Dkt. 21. The Court set discovery to close on May 7, 2025, and trial for August 25, 2025. *Id.* at 1-2. Citi filed its motion to dismiss two weeks later. Dkt. 29. And eight days after that—just 22 days after the Court entered its scheduling order—Citi moved to stay discovery pending a decision on its motion to dismiss. Dkt. 33.

Earlier today, Plaintiffs filed their Amended Complaint under Rule 15(a)(1)(b) in response to Plaintiffs' motion to dismiss. Dkt. 36. That complaint reasserts the two associational discrimination claims under §1981 and the Unruh Civil Rights Act. It also adds two additional claims for intentional discrimination. At this stage, those claims point to Citi's *extensive* public statements—including testimony by its CEO before Congress—that Citi chooses the banks it includes in the Policy because those banks serve minority customers. *See supra* 3-5; Comp. ¶¶12-36. In other words, Citi waives ATM fees for customers of those banks because it perceives them to be minorities and didn't provide the same benefit to Plaintiffs when they made their withdrawals.

## ARGUMENT

"Motions to stay discovery pending ruling on a dispositive motion are generally disfavored in this district." *Flecha v. Neighbors Moving Servs., Inc.*, 944 F. Supp. 2d 1201, 1203 (S.D. Fla. 2013); *accord Leigue v. Everglades Coll., Inc.*, 2022 WL 4110315, at *2 (S.D. Fla. Sept. 8, 2022). "[T]he moving party bears the burden of showing good cause and reasonableness." *Feldman*, 176 F.R.D. at 652 (citation omitted). "In deciding whether to stay discovery … the Court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Id.* (citation omitted).

A discovery stay is not warranted here for several reasons. *First*, Citi has not made a "specific showing of prejudice or burdensomeness." *Montoya v. PNC Bank, N.A.*, 2014 WL 2807617, at *2 (S.D. Fla. June 20, 2014) ("[D]iscovery stay motions are generally denied except where a specific showing of prejudice or burdensomeness is made."). Citi's conclusory statements (at 10) about "countless hours and high costs" to produce "a wide array of documents" don't come close. *See, e.g.*, *Ray*, 2012 WL 5471793, at *3 ("bland generalizations" about burden was insufficient); *accord Montoya*, 2014 WL 2807617, at *3 (same). Citi's request thus fails at the outset for not "identif[ying] in any specific and tangible way the unreasonable discovery burdens it will face absent a stay." *Leigue*, 2022 WL 4110315, at *1 (S.D. Fla. Sept. 8, 2022).

Citi's generalizations are also misleading. Citi claims, for example, that Plaintiffs' requests are "*nationwide in scope* and involve hundreds or potentially *thousands of Citibank branches*." Dkt. 33 at 6 (emphasis added). But Citi's own CEO testified before Congress in 2022 that its branch locations in the United States—where the Policy applies—"are concentrated in the six metropolitan areas of New York, Washington, D.C., Miami, Chicago, San Francisco and Los Angeles." Jane Fraser, *Testimony*, banking.senate.gov (September 22, 2022), https://tinyurl.com/yckv6cnw. She also testified that they "operate 651 retail branches," *id.*, not the "thousands" that Citi claims here. (There are about 2,300 ATMs across those locations).

Citi's burden claims are premature as well. "[E]xtensive, expensive discovery has not yet proceeded" and it "likely will not have proceeded very far by the time the Court issues a ruling." *Gannon v. Flood*, 2008 WL 793682, at *1 (S.D. Fla. Mar. 24, 2008). To the extent Citi "takes issue with Plaintiff's … discovery requests, [it] may move for relief as necessary." *Clampet v. Delta Air Lines, Inc.*, 2023 WL 4763127, at *2 (S.D. Fla. June 26, 2023) (Singhal, J.). There's nothing to

7

suggest that a "reasonably timely ruling on [the] motion to dismiss" would not "suffice to meet any looming threat of unwarranted discovery costs and burdens." *Ray*, 2012 WL 5471793, at *3.

Citi's reliance on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997) and its progeny (at 9-10) is misplaced. "[N]othing in *Chudasama* states that discovery must be stayed pending a decision on a motion to dismiss or that such a motion must be resolved before discovery can begin." *Taser Int'l, Inc. v. Phazzer Electronics, Inc.*, 754 F. App'x 955, 960 (11th Cir. 2018). "Instead, it stands 'for the much narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount.'" *Id*. "Indeed, the Eleventh Circuit has since clarified that it 'only found an abuse of discretion [in *Chudasama*] because the district court ordered the parties to engage in substantive discovery despite failing to rule on the defendants' motion to dismiss for over eighteen months." *Id.* at 961-62. "As many district courts have recognized, *Chudasama* involved particularly egregious facts," including an "unjustifiable delay by the district court in ruling on the motion to dismiss," which are not at issue here. *Ray*, 2012 WL 5471793, at *3 (cleaned up) (collecting cases).

Citi's trio of district court orders from this Court are not on point. In first of those cases, the motion to dismiss was fully briefed and the court was prepared to "enter[] a ruling shortly." *Dry Tech 24-7, Inc. v. Clorox Company*, 2022 WL 20834472, at *1 (S.D. Fla. Dec. 2, 2022) (Singhal, J.). The Court granted that motion three days later. *See Dry Tech 24/7, Inc. v. Clorox Co.*, 2022 WL 18464912, at *1 (S.D. Fla. Dec. 5, 2022) (Singhal, J.). In the second case, the motion was unopposed and there was state court litigation that threatened inconsistent outcomes. *Heikka v. Safeco Ins. Co. of Illinois*, 2021 WL 10256974, at *1 (S.D. Fla. Nov. 1, 2021) (Singhal, J.). In the second case, the nonmoving party fail to respond to the stay request. *SandP Sols., Inc. v. The Silver Logic, LLC*, 2021 WL 9347080, at *2 (S.D. Fla. Nov. 1, 2021). In the third case, the

8

Plaintiffs sought an extension to respond to the motion to dismiss. *Nuwer v. FCA US LLC*, 2020 WL 5748745, at *1 (S.D. Fla. June 25, 2020) (Singhal, J.). None of these scenarios exist here.

*Second*, a stay of discovery would create unnecessary case management problems. *See Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 2023 WL 1927309, at *3 (S.D. Fla. Feb. 9, 2023) ("Courts in the Southern District of Florida … view motions to stay discovery with disfavor 'because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.'"). This Court was fully aware of Plaintiffs' allegations and the discovery deadlines when it issued the case management order. Citi asks the Court (at 11) to throw that order out just a month after the Court issued it. *See Flecha*, 944 F. Supp. 2d at 1203 (denying stay where the court would "likely then be required to extend the … deadlines"); *see also Montoya*, 2014 WL 2807617, at *3 ("It is therefore difficult to imagine how the parties could ever complete all discovery by either deadline if a discovery stay were to remain in effect for two or three months.").

*Third*, a stay disproportionately harms Plaintiffs. *See Ray*, 2012 WL 5471793, at *1 ("[D]elay and prolongation of discovery can also … unfairly hold up the prosecution of the case."). Citi has nearly all the information needed to resolve this lawsuit. Citi developed the Policy, chose the banks that were included, charged every fee, and maintained any records needed to identify class members. Without this information, Plaintiffs cannot prosecute their case, and further delay makes it that much harder to obtain on the Court's case management schedule. *See generally* Dkt. 21 (discovery ends May 2025).

*Fourth*, "to evaluate whether there is a strong likelihood 'the [dismissal] motion will be granted and entirely eliminate the need for … discovery,' the district court must take a 'preliminary peek' at the merits of the motion." *Ray*, 2012 WL 5471793, at *1. There is no "strong likelihood"

here that Plaintiffs' case will be dismissed. The purpose of the "preliminary peek" is to determine if the motion "appears to be clearly meritorious and truly case dispositive." *Flood*, 176 F.R.D. at 652-53. A discovery stay is inappropriate where there "appears to be a genuine dispute," *Flecha*, 944 F. Supp. 2d at 1203, and "dismissal is not a foregone conclusion." *Clampet*, 2023 WL 4763127, at *2.

There is a genuine dispute here. Citi's primary theory for dismissal is that Plaintiffs—who have already been charged the unlawful fees—don't have standing to challenge those fees. That theory has gaping holes. Foremost, Citi wants the Court to apply the "able and ready" standard for standing articulated in *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765 (11th Cir. 2024). That standard applies "when a plaintiff requests *prospective* relief" and it requires the court to "evaluate whether she has sufficiently demonstrated an intent to take the action that she asserts is prohibited." *Id.* at 772 (emphasis added). That standard has no bearing here. Plaintiffs aren't challenging the Policy because they want to use Citi ATMs in the future. They have already been charged the unlawful fees and suffered the "classic pocketbook injury" that regularly provides standing. *See, e.g.*, *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 636 (2023). And courts have long recognized that kind of economic injury provides standing in §1981 cases involving associational discrimination. *See, e.g.*, *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1038-40 (11th Cir. 2008) ("a non-minority plaintiff has standing to allege that it was injured by defendants' discriminatory animus toward third parties" based on the non-minority plaintiff's own injury).

Citi's standing arguments also require this Court to ignore that Citi's ostensibly "factual" attack on jurisdiction is "intertwined with the merits of a cause of action." *Morrison v. Amway Corp.*, 323 F.3d 920, 926 (11th Cir. 2003). Based on a self-serving affidavit and some unspecified

10

"public[] government records," Citi argues (at 2, 9) that Plaintiffs lack standing because the Policy was not race-based. That argument is convenient, because it assumes the question Plaintiffs filed this lawsuit to resolve. It also contradicts Citi's near-decade, unbroken description of the Policy as race-based. *See* Compl. ¶¶ 12-36.

This jurisdictional attack is just a thinly veiled merits argument because it is premised on the question of whether Plaintiffs were harmed because of racial discrimination. *See Morrison*, 323 F.3d at 926 ("[J]urisdiction becomes intertwined with the merits of a cause of action when 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'") (citation omitted). And even if Citi's attack is only partly merits-based, "the proper course of action for the district court … is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case … under Rule 12(b)(6) …." *Id.* at 925 (citation omitted). Under that standard, Plaintiffs' allegations easily clear the threshold for dismissal. *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) ("When ruling on a motion to dismiss, we 'accept the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor.'") (cleaned up).

*Fifth*, given the intertwined nature of Citi's novel standing theory and the merits, the parties couldn't meaningfully distinguish between "jurisdictional" and "merits" discovery even if the Court issued a stay. For example, Citi's jurisdictional arguments turn in part on the criteria it uses to admit banks to the Policy, the process by which those banks are admitted, and communications between Citi and those banks. *See* Mot. 13-14. That information is all relevant to the merits too. *See* Am. Compl. ¶¶27-36 (alleging the criteria by which Citi admits banks to the policy).[1]

---

[1] Citi asserts that it offered "as a compromise" that it "would agree to stay all discovery except jurisdictional discovery." Dkt. 33 a 6. That's not quite right. Citi said it would consider any jurisdictional discovery requests on a case-by-case basis and would not commit to cooperating on

11

Citi's remaining merits arguments regarding Plaintiffs' §1981 and Unruh claims fare no better. *See* MTD 26-28. Citi's cramped reading of this circuit's associational discrimination law conflicts with ample precedent recognizing associational discrimination claims under §1981. *See, e.g.*, *Gordon v. City of Cartersville, Georgia*, 522 F. Supp. 753, 756-57 (N.D. Ga. 1981) (collecting cases). And now Plaintiffs also assert direct discrimination claims against Citi. In addition, Citi's attack on the California subclass's claims is premature. "The question the defendants raise—whether" a lead class plaintiff can bring claims on behalf of a subclass from another state under that state's laws—"is not a standing question at all." *In re Zantac (Ranitidine) Prod. Liab. Litigation*, 2022 WL 16729170, at *5 (11th Cir. Nov. 7, 2022). "[A]ll circuits which have addressed whether a plaintiff can represent unnamed class members whose claims fall under different states' laws have concluded that it is a question that" does not concern "Article III." *Id.* at *6. Courts have instead held that "whether class members' claims fall under another state's laws is a Rule 23 matter and not a standing issue." *Id.* at *5. "For class representation purposes, 'the claims that the plaintiffs made on behalf of class members'" from other states "'need not be stricken or disregarded,' as those claims 'may be considered' when determining the appropriateness of class certification under Rule 23." *Id.* at *6. The same is true for the California claims here too.

Bottom line, Citi has not carried its burden to establish a stay is warranted. Plaintiffs respectfully request that this Court deny the motion to stay discovery.

---

any jurisdiction-based request that Plaintiffs served. At the time, Citi's motion to dismiss had been pending for a week so Plaintiffs had not yet fully evaluated whether they needed jurisdictional discovery and, if so, what discovery that would be. Now, it appears that any "jurisdictional" discovery would overlap with merits discovery—another reason not to issue a stay. The Court can address Citi's purported jurisdictional arguments again at summary judgment should Citi re-raise them.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: July 31, 2024 | /s/ *Daniel Shapiro* <br> Daniel J. Shapiro (Fla. Bar No. 1011108) <br> Bryan Weir (*pro hac vice*) <br> Brandon M. Haase\* (*pro hac vice*) <br> CONSOVOY MCCARTHY PLLC <br> 1600 Wilson Boulevard, Suite 700 <br> Arlington, VA 22209 <br> (703) 243-9423 <br> daniel@consovoymccarthy.com <br> bryan@consovoymccarthy.com <br> brandon@consovoymccarthy.com <br><br> \* Supervised by principals of the firm admitted to practice in Virginia <br><br> *Counsel for Plaintiffs* |

13