Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

WERNER JACK BECKER, DANA
GUIDA, individually and on behalf of
others similarly situated,

      Plaintiffs,

v.

                                    Case No. 0:24-cv-60834-AHS

CITIGROUP INC. d/b/a CITIBANK and
CITIBANK, N.A.,

      Defendants.

## DECLARATION OF MARCO CHAVARIN ON BEHALF OF
## DEFENDANTS CITIGROUP INC. and CITIBANK, N.A.

I, Marco Chavarin, declare as follows:

      1.      I am employed by Defendant Citibank, N.A. ("Citibank", the "Bank"),  as a Senior

Vice President with the Bank's Financial Access and Impact Partnerships Group. I have held this

position since October 2021.  Prior to that role, as of May, 2016, I was employed by Citibank as a

Vice President with what was then called the Community Development Group.  I have personal

knowledge of the facts stated herein.

      2.      Citibank is chartered as a National Bank and is the primary United States banking

indirect subsidiary of Citigroup Inc.

      3.      Citibank banking customers may use Citibank branch Automated Teller Machines

("ATMs") to conduct available banking transactions without paying any fee.  However, if a person

uses a Citibank ATM to withdraw money from an account held at another bank, Citibank generally

charges a transaction fee.  When such a fee is charged, it will be disclosed to the customer on the

ATM screen prior to completion of any transaction, and must be accepted by the customer before proceeding. The customer's bank often charges its own fee for using an out-of-network Citibank ATM.

4.      The Citibank ATM Community Network provides a means for certain financial institutions to enter into agreements with Citibank to obtain fee waivers for withdrawals made from Citibank branch ATMs.

5.      The ATM Community Network consists of a series of contracts ("ATM Network Agreements") that qualifying financial institutions (*i.e.* "Network Institutions") choose to enter into with Citibank, as discussed below. A Network Institution must agree to enter into the ATM Network Agreement contract and its terms in order to become part of the Network, and obtain any Network benefits for its customers' accounts.

6.      Under these contracts, Citibank agrees not to charge fees for ATM withdrawals from ATMs located at Citibank retail branches from Network Institution accounts in exchange for the Network Institutions agreeing to comply with the various terms of the ATM Network Agreements.

7.      Attached to this declaration as Exhibit A is a true and correct copy of an April 5, 2023, ATM Acquiring Agreement currently in place between Citibank and Anchor Bank, a privately held Community Bank in South Florida. The ATM Acquiring Agreement attached as Exhibit B is the standard form agreement between Citibank and Network Institutions participating in the Citibank ATM Community Network.

8.      If a prospective Network Institution declined to accept the terms of the ATM Acquiring Agreement, they would not be admitted to the Citibank ATM Community Network, and

would therefore not be eligible to have ATM fees waived for withdrawals from their banking accounts.

       9.     There are 50 financial institutions currently participating in the Citibank ATM Community Network. Attached to this Declaration as Exhibit C is a true and correct list of all such participating institutions.

       10.    Based on my review of current publicly available government records, including FDIC, OCC, and NCUA resources, 14 of the 50 are not listed as meeting the federal definition of a minority depository institution, as applicable to their form of financial institution.

       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 9, 2024.

Marco Chavarin
Senior Vice President, Citibank, N.A.

# Exhibit A

Exhibit Filed Under Seal at
ECF No. 32

# Exhibit B

## ATM ACQUIRING AGREEMENT

| | Effective Date: |
|---|---|

| Party: | FINANCIAL INSTITUTION | CITIBANK |
|---|---|---|
| **Name:** | | Citibank, N.A. |
| **Address:** | | 388 Greenwich St, 18th Floor New York, NY 10013 |

**IN CONSIDERATION** of the mutual covenants and undertakings contained in this document, and intending to be legally bound, Financial Institution and Citibank (as designated above) agree as follows.

## 1.    DEFINITIONS

**1.1    Specific Words or Phrases.**  For purposes of this Agreement, each word or phrase listed has the meaning designated.  Other words or phrases used in this Agreement may be defined in the context in which they are used.

"**Affiliate**" means any entity that controls, is controlled by, or is under common control, in each case either directly or indirectly with either Citibank or Financial Institution, where "control" means the ownership of, or the power to vote, 20% or more (in the case of Citibank) and more than 50% (in the case of Financial Institution) of the voting stock, shares or interests of the entity.  An entity that otherwise qualifies under this definition is included within the meaning of "Affiliate" even though it qualifies after the Effective Date. If control of an entity, or a division or department within an entity, that is included within the definition of "Citibank" or a Citibank "Affiliate" is sold, otherwise transferred or otherwise separated from control of Citibank, then the entity, division or department that is no longer affiliated with Citibank will, at Citibank's option, be treated as a Citibank Affiliate under this Agreement for up to three (3) years after the effective date of the transfer of control.

"**Agreement**" means the provisions of this "ATM Acquiring Agreement," together with any appendices and other exhibits attached or incorporated by reference, and any amendments agreed to in writing by the Parties.

"**Applicable Law**" means, for all countries, all national, federal, state, provincial and local: (i) Network Rules; (ii) laws (including common law), ordinances, regulations, and codes; and (iii) orders, requirements, directives, decrees, decisions, judgments, interpretive letters, guidance and other official releases of any Regulator that are applicable to Citibank, Citibank's Affiliates, the Financial Institution and Financial Institution's Affiliates, the ATM Service or any other matters relating to the subject matter of this Agreement.

"**ATM**" or "**Automated Teller Machine**" means an unattended self-service device that performs basic banking functions such as accepting deposits, cash withdrawals, ordering transfers among accounts, loan payments and account balance inquiries.

"**ATM Card**" means a payment device (including the account associated therewith) bearing either a Mastercard or Visa logo that can be used to access a checking (including a demand deposit account and/or a NOW account), savings, current, sight deposit or share draft account for ATM Transactions.

"**ATM Service**" has the meaning set forth in Section 2.2(i).

"**ATM Transaction**" means a currency transaction effected using an ATM Card and conducted at an ATM, including withdrawal and funds transfers but not transactions involving the purchase of goods and/or

services.

"**BIN Table**" means a list of Bank Identification Numbers issued by either Mastercard or Visa that Financial Institution provides to Citibank in accordance with this Agreement identifying those Financial Institution Customers, by their associated BINs, which are eligible for the ATM Service.

"**Breach**" has the meaning set forth in Section 3.3(i).

"**Citibank ATM**" means a proprietary ATM that is owned and operated by Citibank and located at a Citibank branch.

"**Citibank Marks**" means the name, brand, design, image, visual representation, hologram, logo, service mark, trade dress, trade name, trademark or other distinctive identification of Citibank.

"**Confidential Information**" has the meaning set forth in Section 5.1.

"**Financial Institution**" means, for the general purposes of the Agreement the entity designated above as "Financial Institution".

"**Financial Institution ATM Card**" means an ATM Card issued by Financial Institution.

"**Financial Institution Customer**" means an individual authorized by Financial Institution to use a Financial Institution ATM Card to perform an ATM Transaction at an ATM.

"**Financial Institution Marks**" means the name, brand, design, image, visual representation, hologram, logo, service mark, trade dress, trade name, trademark or other distinctive identification of Financial Institution.

"**Damages**" has the meaning set forth in Section 7.1.

"**Defaulting Party**" has the meaning set forth in Section 3.3(ii).

"**Disclosing Party**" has the meaning set forth in Section 5.1.

"**Indemnifying Party**" has the meaning set forth in Section 7.1.

"**Indemnitees**" has the meaning set forth in Section 7.1.

"**Network Rules**" the rules, operating rules, licensor rules, directives, memoranda, policies, and other requirements imposed by a Payment Network and relating to ATM Cards as such rules, operating rules, licensor rules, directives, memoranda, policies, or other requirements may be amended from time to time.

"**Party**" means either Financial Institution or Citibank, individually, as the context so requires; and "**Parties**" means Financial Institution and Citibank, collectively.

"**Payment Network**" means an electronic network or system under which ATM Transactions may be accepted and related transaction data submitted for Processing the ATM Transaction.

"**Personnel**" means (as indicated) a Party's or its Affiliate's directors, officers, employees, agents, auditors, consultants, suppliers, subcontractors, service providers, and contractors. For clarity, "**Personnel**" does not include the other Party or any third parties claiming through the other Party.

"**Processing**" means the authorization, clearance or settlement of a transaction.

"**Receiving Party**" has the meaning set forth in Section 5.1.

"**Regulator**" or "**Regulatory**" refers to any government authority, department or agency, or any judicial or regulatory (including self-regulatory) organization having authority, oversight jurisdiction or similar power over any of the Parties or any of their Affiliates in any national, federal, state, provincial or local jurisdiction.

"**Renewal Term**" has the meaning set forth in Section 3.2.

"**Term**" has the meaning set forth in Section 3.2.

"**Test Period**" has the meaning set forth in Section 3.1.

**1.2    Common Words.** The following words are interpreted as designated: (i) "or" connotes any combination of all or any of the items listed; (ii) where "including," "include" or "includes" is used to refer to an example or begin a list of items, which example or items is not exclusive; and (iii) "specified" requires that an express statement is contained in the relevant document.

**2.    SCOPE OF SERVICES**

**2.1    Financial Institution Obligations**

(i)    Immediately following the execution of this Agreement, Financial Institution shall transmit to Citibank an initial BIN Table to enable Citibank to identify those Financial Institution Customers that may benefit from ATM Service. Financial Institution may thereafter transmit updated BIN Tables to Citibank from time to time during the Term.  Financial Institution will transmit BIN Tables to Citibank in such format, manner and frequency as the Parties shall mutually agree.

(ii)    Financial Institution shall be responsible for (A) managing the account relationships with Financial Institution Customers, including the issuance of Financial Institution ATM Cards and Financial Institution Customers' use of a Financial Institution ATM Card; (B) ensuring that Financial Institution Customers use a Financial Institution ATM Card at Citibank ATMs in accordance with Applicable Law; and (C) the acts and omissions of Financial Institution Customers relating to their use of the ATM Service.

(iii)    Financial Institution will cooperate and collaborate with Citibank or Citibank's Regulators to the extent reasonably required by Citibank or as otherwise reasonably necessary to identify and address issues and problems affecting the implementation and management of the ATM Service.

(iv)    The Parties acknowledge and agree that (A) as between the Parties, Financial Institution is solely responsible for the delivery and accuracy of BIN Tables to Citibank; (B) Citibank has no responsibility or obligation to confirm, verify or otherwise review any information contained in any BIN Table; (C) liability for loss arising from the delayed delivery of, or any incorrect, inaccurate or mis-formatted information in, a BIN Table shall, as between the Parties, be the responsibility of Financial Institution except to the extent related to any breach of this Agreement by Citibank, or the fraud, willful misconduct or gross negligence of Citibank.

(v)    During the Term, Financial Institution shall use commercially reasonable efforts to market, promote and publicize the ATM Service to Financial Institution Customers, subject to

Financial Institution's license rights in Citibank Marks and Citibank's reasonable review and approval of related marketing materials.

**2.2 Citibank Obligations**.

(i) During the Term, Citibank will (a) make available to Financial Institution Customers the ability to initiate ATM Transactions at Citibank ATMs in accordance with this Agreement and pursuant to the Network Rules (the "**ATM Service**"); and (b) not impose on such Financial Institution Customers any surcharge or similar fee solely for initiating an ATM Transaction using a Financial Institution ATM Card at a Citibank ATM; provided, however, that during such time:

   a. Financial Institution continues to meet the standards for participation as established by Citibank from time to time; and

   b. Financial Institution does not impose any surcharge or similar fee on Financial Institution Customers solely for initiating an ATM Transaction using a Financial Institution ATM Card at a Citibank ATM or any ATM within any interbank network of which Financial Institution is a member; and

   c. Nothing in this Section 2.2 will operate to limit Financial Institution's rights to impose surcharges or fees on any Financial Institution Customer for initiating an ATM Transaction using a Financial Institution ATM Card at any ATM other than a Citibank ATM or any ATM within any interbank network of which Financial Institution is a member.

(ii) Nothing in this Section 2.2 will operate to limit Financial Institution's rights to impose surcharges or fees on any Financial Institution Customer for initiating an ATM Transaction using a Financial Institution ATM Card at any ATM other than a Citibank ATM.

(iii) If a Financial Institution customer is inadvertently charged a surcharge fee by Citibank when using a Citibank ATM, Citibank will reimburse Financial Institution pursuant to the Issue Claim Procedure set forth in Appendix A.

**2.3    Costs and Expenses.**  Other than as expressly provided for in this Agreement, each Party shall be responsible for its own costs and expenses including customary interchange fees in connection with exercising its rights or performing its obligations under this Agreement.

**2.4    Independent Contractors.** The Parties agree they are independent contractors to each other in performing their respective obligations hereunder. Nothing in this Agreement or in the working relationships being established and developed hereunder shall be deemed, nor shall it cause, either Party to be treated as a partner, joint venturer, or otherwise as a joint associate for profit with the other Party and none of the officers, employees, agents or representatives of either Party shall be subject to control of the other Party.

**3.    TERM AND TERMINATION**

**3.1    Term.**  This Agreement begins on the Effective Date and continues for two years unless superseded or otherwise terminated by Citi or Client. The Term can be extended for one additional two-year period by mutual written agreement by authorized representatives of both Citibank and Financial Institution before the end of the then-current term (use of email is deemed acceptable).

3.2    **Termination Rights**.

(i)     Each Party shall have the right to terminate this Agreement immediately upon written notice to the other Party if the other Party materially fails to observe or perform any of its obligations under this Agreement or any of its representations or warranties is materially inaccurate ("**Breach**"); provided, however, that if such Breach is susceptible of cure, such termination shall not take effect until the non-Breaching Party has provided the Breaching Party with a written notice that explains with reasonable particularity the nature of the Breach, and the Breaching Party has failed to cure the Breach within: (A) forty-five (45) days following receipt of the notice; or (B) if cure of such Breach cannot be effected in such time, then within such additional time as is necessary to cure such Breach using commercially reasonable efforts

(ii)    Each Party shall have the right to terminate this Agreement immediately upon written notice to the other Party if the other Party ("**Defaulting Party**"): (A) admits in writing its inability to pay its debts generally as they become due or fails generally to pay its debts as they become due; (B) becomes insolvent; (C) experiences a substantial cessation of its regular course of business; (D) makes an assignment for the benefit of its creditors; (E) files any voluntary petition in bankruptcy under Applicable Law, as in effect from time to time; (F) has an involuntary petition in bankruptcy filed against it under any such law and such petition is not discharged within ninety (90) days from the date of filing; (G) consents to the appointment of a receiver for all or a substantial portion of its property; (H) becomes subject to an order of a Regulator assuming custody, attaching or sequestering all or a material portion of its property or assets, which order is not suspended or terminated within ninety (90) days from the inception thereof; (I) consents to any such action or takes corporate action in furtherance thereof; and/or (J) in the case of Financial Institution, (1) becomes subject to an order of any Regulator appointing a custodian, receiver, liquidator, assignee, trustee or sequestrator (or similar official) of Financial Institution or of any substantial part of its properties, or ordering the winding-up of liquidation of its affairs, and such order is not vacated, discharged, stayed or bonded within ninety (90) days from the date of entry thereof; or (2) consents to any such action or takes corporate action in furtherance thereof.

(iii)   Each Party shall have the right to terminate this Agreement immediately upon thirty (30) days' notice, for any reason and as each Party may determine in its sole and absolute discretion.

3.3    **Orderly Transfer.**  Upon request, or in any event, upon the expiration or termination of this Agreement, each Party will provide all information, cooperation and assistance to the other Party, as such other Party may reasonably request, to wind-down the availability of the ATM Service to Financial Institution Customers and to assure an orderly return or transfer of Confidential Information (and related records and files) to such other Party.

## 4.    REPRESENTATIONS, WARRANTIES AND COVENANTS

4.1    Each Party covenants, represents and warrants to the other, as of the Effective Date and on a continuing basis during the Test Period and during the Term, and for such additional period after the Term during which such Party has not completed full performance of its obligations hereunder, that (i) it is duly organized, validly existing and in good standing under Applicable Law; and (ii) it has full corporate power and authority to execute, deliver, and perform this Agreement according to its terms, it possesses all licenses, consents, and approvals required to do so, and the execution, delivery, and performance of this Agreement have been duly authorized by it.

**4.2**     Each Party represents and warrants to the other Party as of the Effective Date that there are no actions, suits, or proceedings existing or pending against or affecting it before any Regulator which would have a material adverse effect on its ability to perform its obligations and exercise its rights hereunder, except for proceedings which it is contesting and challenging in good faith and which it does not reasonably believe will result in a final order or decree materially affecting its ability to perform this Agreement.

**4.3**     Subject to all other express provisions of this Agreement, each Party covenants that during the Test Period and during the Term, and for such additional period after the Term during which such Party has not completed full performance of its obligations hereunder, such Party shall exercise its rights and perform its obligations under this Agreement in accordance with Applicable Law.

**4.4     Disclaimer.**  EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT OR ESTABLISHED BY APPLICABLE LAW AS RIGHTS THAT CANNOT BE WAIVED OR LIMITED BY CONTRACT, EACH PARTY DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**5.     CONFIDENTIAL INFORMATION**

**5.1**     This Agreement, and all information provided pursuant to or in connection with either Party's performance under this Agreement ("**Confidential Information**") are confidential and proprietary to the Party providing the Confidential Information (the "**Disclosing Party**") to the other Party (the "**Receiving Party**") including information that the Disclosing Party has identified in writing as confidential at the time of disclosure and all information concerning the Disclosing Party's past, current, and planned products, services, fees, member institutions, concepts, strategies, sales estimates, financials, methodologies, research, services, business activities, business opportunities, marketing plans, other proprietary information and the like, whether in regard to any product, service, country, region or other location. Notwithstanding the foregoing, Confidential Information shall not include information which: (i) is now generally known to the public or becomes known to the public; provided, however, that it does not become publicly known through disclosure by the Receiving Party in violation of this Agreement or any other agreement between the Parties; (ii) is possessed by the Receiving Party in written form prior to its disclosure by the Disclosing Party to the Receiving Party; (iii) is received by the Receiving Party lawfully and in good faith from a third party who to the Receiving Party's knowledge has no confidentiality obligation to the Disclosing Party with respect to such information; or (iv) is lawfully and independently developed or acquired by the Receiving Party without reliance in any way on Confidential Information received or generated in the course of conducting the matters set out in this Agreement. If the Receiving Party asserts that any exception set out in the preceding sentence allows the disclosure of any Confidential Information, it shall promptly submit to the Disclosing Party, to the extent applicable, written documentation demonstrating the applicability of the claimed exception.

**5.2     Use and Treatment of Confidential Information**. The Receiving Party shall not use any Confidential Information provided by the Disclosing Party for any purposes other than as necessary to perform its obligations under this Agreement or as otherwise explicitly permitted or required under this Agreement. Further, the Receiving Party shall (i) limit dissemination of Confidential Information to its Personnel and those of its relevant Affiliates strictly on a "need to know" basis; (ii) not remove or obscure proprietary rights notices that appear on Confidential Information and copies thereof; and (iii) not use Confidential Information as the basis to purchase, sell or otherwise transfer shares of the Disclosing Party.

**5.3     Disclosure of Confidential Information**.  Without the express written consent of the Disclosing Party, the Receiving Party shall not disclose or provide access to any Confidential Information to any person or entity, with the exception of disclosure to any representative that has a need to know, for the purposes of complying with its obligations or exercising its rights hereunder, the specific Confidential Information, and that entered into an agreement containing confidentiality obligations with respect to such Confidential

Information as least as restrictive as the provisions set forth in this Section 5. The Receiving Party shall not be deemed to have violated this Agreement if it discloses Confidential Information in response to or to comply with (a) a bona fide subpoena, court order or other lawful process issued by a Regulator, or (b) Applicable Law, provided, however, that the Receiving Party shall, unless prohibited by Applicable Law, have promptly given the Disclosing Party written notice of its intention to make such disclosure so that the Disclosing Party may seek by legal means to prevent or limit such disclosure or to otherwise ensure the continued confidentiality of such disclosure(s).

**5.4     Protection of Confidential Information**. The Receiving Party shall take reasonable measures, using the same care taken by such Party to safeguard its own confidential and proprietary information, to prevent disclosure by its representatives of any Confidential Information, which shall be no less than a commercially reasonable standard of care. The Receiving Party shall be responsible for any unauthorized use or disclosure of the Disclosing Party's Confidential Information by the Receiving Party's representatives.

**5.5     Remedies**. The Parties acknowledge that the Confidential Information provided by the Disclosing Party constitutes confidential and proprietary information of the Disclosing Party and that use or disclosure thereof by the Receiving Party or any representatives of such Receiving Party, other than in accordance with the express terms of this Agreement or as otherwise authorized in writing by a senior officer of the Disclosing Party, constitutes a Breach or, after the Term, a material breach of such Disclosing Party's continuing rights. In such event, the Parties acknowledge that such Disclosing Party may be immediately and irreparably harmed, that money damages may not provide full and appropriate relief, and that, notwithstanding anything to the contrary in this Agreement or any other agreement between the Parties, such Disclosing Party may therefore immediately seek to terminate this Agreement and obtain an order for appropriate injunctive relief.

**5.6     Notice**. Each Party shall notify the other Party of any loss or disclosure or use of Confidential Information in breach of this Section 5, promptly after such loss, disclosure or use comes to such Party's attention and shall take all reasonable steps to prevent, control or remedy such violation.

**5.7     No Public Announcement**.  Neither Party shall issue any public announcements or make any published statements regarding this Agreement nor the subject matter hereof, without the prior written consent of the other Party; provided, however, that the Parties shall work together in good faith to develop mutually agreed upon responses to media inquiries concerning this Agreement.

**6.     TRADEMARKS**

**6.1     Financial Institution Marks**. Financial Institution hereby grants to Citibank a non-exclusive, royalty-free, non-assignable license to use (but not the right to sublicense) the Financial Institution Marks (and the registrations that exist for such Financial Institution Marks, if any) set forth in Appendix B in the United States.  The Financial Institution Marks shall be used only in the forms and format expressly approved in advance, in writing, by Financial Institution, which approval shall not be unreasonably withheld, conditioned or delayed.  Title to and ownership of the Financial Institution Marks shall remain with Financial Institution or its Affiliates and all use of the Financial Institution Marks shall inure to the sole benefit of Financial Institution or its Affiliates.

Financial Institution also grants to Citibank permission to establish and maintain a hyperlink from the Financial Institution Licensed Marks on Citibank's websites to Financial Institution's website located at [insert] (**Institution Hyperlink**"). The Financial Institution Hyperlink will be for the purpose of directing site visitors from select Citibank websites chosen by Citibank in its sole and absolute discretion to Financial Institution's website in connection with promoting the ATM Services, and Citibank may link to the website solely for that purpose. Financial Institution reserves the rights, in its sole discretion, to eliminate, disable or discontinue the Financial Institution Hyperlink at any time, or to require Citibank to

eliminate, disable or discontinue the Financial Institution Hyperlink at any time.

Other than expressly provided herein with respect to the Financial Institution Marks, Citibank shall not obtain any right, title or other interest in the Financial Institution Marks by virtue of this Agreement. Upon termination of this Agreement, all license rights conveyed by Financial Institution to Citibank shall cease, and all such rights shall revert to Financial Institution.

**6.2      Citibank Marks**.  Citibank hereby grants to Financial Institution a non-exclusive, royalty-free, non-assignable license to use (but not the right to sublicense) the Citibank Marks (and the registrations that exist for such Citibank Marks, if any) set forth in Appendix B in the United States.  The Citibank Marks shall be used only in the forms and format expressly approved in advance, in writing, by Citibank, which approval shall not be unreasonably withheld, conditioned or delayed.  Title to and ownership of the Citibank Marks shall remain with Citibank or its Affiliates and all use of the Citibank Marks shall inure to the sole benefit of Citibank or its Affiliates.

Citibank also grants to Financial Institution permission to establish and maintain a hyperlink from the Citibank Licensed Marks on the Financial Institution's website located at [insert] to select Citibank websites chosen by Citibank in its sole and absolute discretion ("**Citibank Hyperlink**"). The Citibank Hyperlink will be used for the purpose of directing site visitors from Financial Institution's website to Citibank websites in connection with promoting the ATM Services, and Financial Institution may link to such Citibank websites solely for that purpose. Citibank reserves the rights, in its sole discretion, to eliminate, disable or discontinue the Citibank Hyperlink at any time, or to require Financial Institution to eliminate, disable or discontinue the Citibank Hyperlink at any time.

Other than expressly provided herein with respect to the Citibank Marks, Financial Institution shall not obtain any right, title or other interest in the Citibank Marks by virtue of this Agreement. Upon termination of this Agreement, all license rights conveyed by Citibank to Financial Institution shall cease, and all such rights shall revert to Citibank.

**6.3. Program Communications.** Citibank may provide consulting and other services to Financial Institution with the creation of Program Materials which may include drafting and design assistance. In creating such Program Materials, the Financial Institution may provide information, graphics, photographs or other content for use in connection with the Program Materials ("Financial Institution Content").  All Financial Institution Content shall be original or licensed by the Financial Institution for use in connection with the Program Materials and shall not violate the intellectual property rights of any third party. Financial Institution shall secure all necessary consents, approvals and licenses for use of any third-party intellectual property contained in the Financial Institution Content for use in the Program Materials for the benefit of Financial Institution in perpetuity on a worldwide basis without any payment obligation. All Program Materials created with Citibank's assistance shall be subject to Financial Institution's prior written approval (including use of electronic e-mail), which will not be unreasonably withheld. Citibank's comments, edits, modifications and other recommendations shall not constitute financial, legal or tax advice to Financial Institution. Financial Institution shall follow the procedures for producing Program Materials set forth in in Appendix C.

Financial Institution acknowledges that Citibank may utilize its pre-existing designs, inventions, systems, models, know-how and processes (collectively, "Citibank Materials") in providing these services to Financial Institution. The Citibank Materials utilized for the Program are set forth in Exhibit C. CITIBANK DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY WITH RESPECT TO THE CITIBANK MATERIALS.  If any Citibank Materials are incorporated into any Program Materials or furnished in conjunction with Citibank's services, Citibank will be deemed to have (at no additional cost to Financial Institution) granted to Financial Institution a revocable, royalty-free, non-exclusive license to use, execute, reproduce, display, perform, and distribute the Citibank Materials in conjunction with the use of

the Program Materials in the Territory.  The license to use the Citibank Materials shall terminate automatically upon termination of the Agreement.

Any Program Materials developed by Citibank and provided to Financial Institution by Citibank will be at Citibank's expense. Program Materials will only be provided in the initial year of the Agreement.  All materials developed and published by Financial Institution will use model language (including disclosures) from the Citibank Materials and will be submitted to Citibank for approval.

The Program Materials include monthly reports provided to Financial Institution as depicted in Appendix D.


## 7.    INDEMNITY

**7.1     General Indemnity.**  Each Party (the "**Indemnifying Party**") will defend, hold harmless and indemnify the other Party, its Affiliates and their Personnel (collectively, the "**Indemnitees**") from and against any and all losses, claims, liabilities, costs and expenses (including taxes, fees, fines, penalties, interest, reasonable expenses of investigation, and attorneys' fees and disbursements) as incurred (collectively "**Damages**") arising out of, or relating to (i) any breach by the Indemnifying Party of any of the obligations assumed under, or the representations, warranties or covenants provided in, this Agreement; (ii) any gross negligence, or willful or intentional misconduct of the Indemnifying Party; or (iii) any act or omission by the Indemnifying Party that results in personal injury or death, or damage to property.

**7.2     Indemnification Procedures.**  If an Indemnitee seeks indemnification under this Agreement, the Indemnitee will: (i) give prompt notice to the Indemnifying Party concerning the existence of the indemnifiable event; (ii) grant authority to the Indemnifying Party to defend or settle any related action or claim, and (iii) provide, at the Indemnifying Party's expense, all information, cooperation and assistance to the Indemnifying Party as may be reasonably necessary for the Indemnifying Party to defend or settle the claim or action.  An Indemnitee's failure to give prompt notice does not constitute a waiver of the Indemnitee's right to indemnification and affects the Indemnifying Party's indemnification obligations only to the extent that the Indemnifying Party's rights are materially prejudiced by the failure or delay. Notwithstanding anything to the contrary in this Agreement: (a) an Indemnitee may participate at its own expense, directly or through counsel of its choice, in any defense and settlement, and (b) the Indemnifying Party will not enter into any settlement agreement on terms that would diminish the rights provided to the Indemnitee or increase the obligations assumed by the Indemnitee under this Agreement, without the prior written consent of the Indemnitee.  If the Indemnifying Party does not defend any claim as required under this Agreement, the Indemnitee will have the right to: (1) defend or settle the claim as it may deem appropriate, at the cost and expense of the Indemnifying Party, and the Indemnifying Party will promptly reimburse the Indemnitee for all costs, expenses, settlement amounts and other Damages, or (2) implead the Indemnifying Party in any applicable lawsuit as a third party defendant in the forum in which the claim was filed or in which the lawsuit is pending, notwithstanding Section 9.6 (Jurisdiction) below.

**7.3     Notification of Third-Party Claims.** Financial Institution will promptly notify Citibank concerning any threat, warning, claim or action against Financial Institution that could have an adverse impact on Citibank's provision of the ATM Service.

## 8.    LIMITATION OF LIABILITY

EXCEPT TO THE EXTENT OTHERWISE EXPRESSLY PROVIDED IN THIS SECTION, NEITHER PARTY IS LIABLE TO THE OTHER PARTY (INCLUDING ANY PERSON OR ENTITY CLAIMING THROUGH THE OTHER PARTY) FOR THE OTHER PARTY'S LOST PROFITS OR SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR EXEMPLARY DAMAGES ARISING OUT OF OR IN ANY MANNER CONNECTED WITH THIS AGREEMENT OR ITS SUBJECT MATTER,

REGARDLESS OF THE FORM OF ACTION AND WHETHER OR NOT THE NON-CLAIMING PARTY HAS BEEN INFORMED OF, OR OTHERWISE MIGHT HAVE ANTICIPATED, THE POSSIBILITY OF DAMAGES.  THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION 8 OR ELSEWHERE IN THIS AGREEMENT DO NOT APPLY TO, OR TAKE INTO ACCOUNT, DAMAGES: (i) RESULTING FROM THE GROSS NEGLIGENCE, BAD FAITH OR THE WILLFUL OR INTENTIONAL MISCONDUCT OF A PARTY, (ii) STEMMING FROM PERSONAL INJURY, DEATH, OR PROPERTY DAMAGE CAUSED BY A PARTY, (iii) ARISING FROM CLAIMS FOR WHICH EITHER PARTY HAS AGREED TO INDEMNIFY THE OTHER PARTY UNDER THIS AGREEMENT, OR (iv) ARISING FROM EITHER PARTY'S BREACH OF ITS OBLIGATIONS UNDER SECTION 5 (CONFIDENTIAL INFORMATION).

## 9    OTHER TERMS AND CONDITIONS

**9.1    Assignment.** Citibank may, with notice to Financial Institution, assign this Agreement or any of its rights or interests in this Agreement, or delegate any of its obligations under this Agreement, to: (i) a Citibank Affiliate, (ii) Citibank's successor pursuant to a merger, reorganization, consolidation or sale, or (iii) an entity that acquires all or a substantial portion of those of Citibank's assets or business for which the ATM Service was acquired or are then being used.  Except as otherwise provided above, neither Party may assign this Agreement or any of its rights or interests hereunder or thereunder or delegate any obligation to be performed hereunder or thereunder, without the prior written consent of the other Party.  Any attempted assignment or delegation in contravention of this Section 9.1 is null and void, and of no force or effect.  This Agreement is binding upon, and will inure to the benefit of, the legal successors and permitted assigns of the Parties.

**9.2    Notices**. Any notice, demand or other communication (collectively "**notice**") required or permitted under this Agreement must be made in writing and is deemed to be given: (i) when actually received by the representatives designated to receive notices for the intended recipient, or (ii) when delivered to the address set forth in the introductory table of this Agreement, provided the notice is sent to a Party's representative by certified or registered mail (return receipt requested) or commercial express courier (with tracking capabilities).  Notices concerning this Agreement must be sent to the person who signed this Agreement on behalf of the intended recipient. Either Party may change its addresses or representatives for receiving notices upon notice to the other.

**9.3    No Third-Party Beneficiaries**. Unless expressly provided herein, the provisions of this Agreement are for the benefit of the Parties hereto and not for any other person or entity.

**9.4    No Violation**. Nothing contained in this Agreement shall be construed as requiring any Party to take any action, or omit to take any required action that would result in a violation of or any non-compliance with, Applicable Law

**9.5    Governing Law**. The substantive laws of the State of New York will in all respects govern this Agreement as though this Agreement was entered into and was to be entirely performed within the State of New York, without regard to conflict of law principles. For the avoidance of doubt, nothing stated in this Agreement will prejudice or limit the rights or remedies of either Party to enforce any award or decree under the laws of any jurisdiction where property or assets of the other Party may be located.

**9.6    Jurisdiction.** All claims or disputes arising out of or in connection with this Agreement will be heard exclusively by any of the federal or state courts of competent jurisdiction located in the Borough of Manhattan, New York City, NY, USA.  To that end, each Party irrevocably consents to the exclusive jurisdiction of, and venue in, the courts, and waives any: (i) right to object (with respect to any proceedings) that the court does not have jurisdiction over (A) the substance of claims or disputes, or (B) a Party, and (ii) claim that the proceedings have been brought in an inconvenient forum.  Without limiting the generality of the foregoing, Financial Institution consents to the service of process in connection with any claim or

dispute by registered or certified mail, postage prepaid to Financial Institution, to the address for notice set forth in or designated in this Agreement.  To the fullest extent permitted by law, each Party hereby expressly waives (on behalf of itself and on behalf of any person or entity claiming through that Party) any right to a trial by jury in any action, suit, proceeding, or counterclaim of any kind arising out of or in any manner connected with this Agreement.

**9.7     Equitable Relief.**  Each Party acknowledges that the failure to perform its duties under Section 5 (Confidential Information) may cause the other Party to suffer irreparable injury for which the injured Party will not have an adequate remedy available at law.  Accordingly, the injured Party may seek to obtain injunctive or other equitable relief to prevent or curtail any breach, threatened or actual, without posting a bond or security and without prejudice to any other rights as may be available under this Agreement or under Applicable Law.

**9.8     Cumulative Remedies and Off Sets.**  Except as otherwise expressly provided in this Agreement, all remedies in this Agreement are cumulative and in addition to (not in lieu of) any other remedies available to a Party at law or in equity.

**9.9     Waiver.**  No course of dealing, failure by either Party to require the strict performance of any obligation assumed by the other, or failure by either Party to exercise any right or remedy constitutes a waiver or cause a diminution of the obligations or rights provided under this Agreement.  No provision of this Agreement may deemed to have been waived by any act or knowledge of either Party, but only by a written instrument signed by a duly authorized representative of the Party to be bound.  Waiver by either Party of any default does not constitute a waiver of any other or subsequent default.

**9.10     Force Majeure.**  A Party is excused from a delay in performing, or a failure to perform, its obligations under this Agreement to the extent the delay or failure is caused by the occurrence of any contingency beyond the reasonable control, and without any fault, of that Party.  Performance times are extended for a period of time equivalent to the time lost for the excusable delay.  If an excusable delay or failure continues for more than thirty (30) days, the Party not excused from performance may terminate this Agreement upon written notice to the other Party.

**9.11     Interpretation.**  Each Party acknowledges and agrees that any interpretation of this Agreement may not be construed against a Party by virtue of that Party having drafted the provisions.

**9.12     Modification.**  Subject only to any express exception set forth in the appendices, schedules, exhibits, addenda and other documents attached or specifically incorporated by reference, the terms, conditions, covenants and other provisions of this Agreement may be modified, amended, supplemented or otherwise changed only by a written instrument (excluding e-mail or similar electronic transmissions) that specifically purports to do so and is physically signed by an authorized representative of each Party.

**9.13     Severability.**  If a court of competent jurisdiction declares any provision of this Agreement to be invalid, unlawful or unenforceable as drafted, the Parties intend for that provision be amended and construed in a manner designed to effectuate the purposes of the provision to the fullest extent permitted by law.  If a provision cannot be so amended and construed, it will be severed, and the remaining provisions will remain unimpaired and in full force and effect to the fullest extent permitted by law.

**9.14     Survival.**  The provisions of this Agreement that, by their nature and content, must survive the completion, rescission, termination or expiration of this Agreement in order to achieve the fundamental purposes of this Agreement (including any licenses granted to Citibank or Financial Institution under this Agreement) will so survive and continue to bind the Parties.  Without limiting the generality of the foregoing, the Parties specifically acknowledge that the following provisions will survive and continue to bind the Parties: Sections 1 (Definitions); 2.1(iii) (Financial Institution Obligations); 3.3 (Orderly Transfer); 5 (Confidential Information); 7 (Indemnity); 8 (Limitation of Liability); 9.1 (Assignment); 9.2 (Notices);

9.5 (Governing Law); 9.6 (Jurisdiction); 9.7 (Equitable Relief); 9.8 (Cumulative Remedies and Off Sets); 9.11 (Interpretation); 9.12 (Modification); 9.13 (Severability); 9.14 (Survival); and 9.16 (Complete Understanding).

**9.15     Counterparts.**  This Agreement may be signed in counterparts, each of which is deemed to be an original.

**9.16     Complete Understanding.**  This Agreement (together with the appendices, schedules, exhibits, addenda and other documents attached or specifically incorporated by reference, including any amendments) constitutes the complete understanding of the Parties, and supersedes all prior or contemporaneous agreements, discussions, negotiations, promises, proposals, representations, and understandings (whether written or oral) between the Parties.  Financial Institution specifically acknowledges and agrees that it did not enter into this Agreement in reliance upon any agreement, promise, representation, or understanding made by or on behalf of Citibank that is not stated in this Agreement.

*[signature page to follow]*

**IN WITNESS WHEREOF,** the Parties to this Agreement, each acting with proper authority, have signed this Agreement as of the Effective Date designated above.

**FINANCIAL INSTITUTION:**                    **CITIBANK, N.A.:**

By: _____              By: _____

Name: _____              Name: __Mark Gilder_____

Title: _____              Title: __Director, Distribution Strategy__

Date: _____              Date: _____

**APPENDIX A**
**ISSUE CLAIM PROCESS**

## Issue Claim Form for Citi® ATM Community Network

| Instructions – Claiming a Fee or Reporting an Issue |
|---|
| Citi provides Citi ATM Community Network members with the following procedure to claim a reversal for an inadvertently charged fee to their clients and/or to report an issue<br><br>1. Completes Issue Claim Form<br>2. Sends form by email to Matthew.coqueran@citi.com |

| Institution Contact: | Organization Name:<br>Address Ln1:<br>Address Ln2:<br>City:<br>State:<br>Zip:<br>Attn:<br>Phone: |
|---|---|

| Date of Fee | Card Number | Fee Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

| Issues | Please clearly delineate any issues other than standard fee reversals if applicable: |
|---|---|
|  |  |

| Fees and Other Issues Response | Citi reviews fees and sends them directly to client if approved; if not approved, Matthew.coqueran@citi.com will notify the Institution Contact in Issues section of same claim form<br><br>Matthew.coqueran@citi.com confirms receipt of other issues and a Program Rep responds to Institution Contact to resolve issue |
|---|---|

Inclusive Finance   **citi**

Rev. 09/2020                                                                                    ATM701-FL-08

**APPENDIX B**

**FINANCIAL INSTITUTION MARKS**

| Financial Institution Marks |
|---|
|  |

| Citibank Marks |
|---|
|  |

**APPENDIX C**
**PROGRAM MATERIAL SAMPLES, PROCEDURES, AND ORDER FORMS**

# Digital Materials Request/Order Form for Citi® ATM Community Network

**Instructions – Ordering Marketing Materials**

Citi provides Citi ATM Community Network members with Citi-approved marketing materials for your use.

1. Reviews marketing materials and decides type – quantities are automatic
2. Completes Order Form with attachment(s) as necessary
3. Return this form by email to citi_orders@fenskemedia.com

| | | |
|---|---|---|
| **Type/Quantity** (check the type and quantity is automatic by language) | ☐ Bank  Bank Version | ☐ Credit Union  Credit Union Version |
| **Language** (Select all that apply) | ☐ English | ☐ Spanish     ☐ Chinese |

| | |
|---|---|
| **Additional Instructions** | Please provide high resolution logo of your institution |
| **Send To** (Include Name and Email) | |

> **NOTE: Vendor will send proofs directly to member**
> **Member approves proofs or requests edits (if needed) directly with vendor**
> **Vendor makes edits**
> **Member provides final approval**
>
> ***Vendor cannot proceed without a FINAL approval***

citi

Rev. 09/2020

**APPENDIX C (CONTINUED)**
**PROGRAM MATERIAL SAMPLES, PROCEDURES, AND ORDER FORMS**

## Printed Materials Request/Order Form for Citi® ATM Community Network

**Instructions – Ordering Marketing Materials**

Citi provides Citi ATM Community Network members with Citi-approved marketing materials for your use.

1. Reviews marketing materials and decides type – quantities are automatic
2. Completes Order Form with attachment(s) as necessary
3. Return this form by email to citi_orders@fenskemedia.com

| Type/Quantity (check the type and quantity is automatic by language) | ☐ 10 Posters | ☐ 500 Flyers | ☐ 500 Wallet Cards |
|---|---|---|---|

| Language (Select all that apply) | ☐ English | ☐ Spanish | ☐ Chinese |
|---|---|---|---|
| | | ☐ Other | |

| Additional Instructions | Please provide high resolution logo of your institution |
|---|---|
| Send To (Include Name and Email) | Name: _____ <br> Email: _____ |

**NOTE: Vendor will send proofs directly to member**
**Member approves proofs or requests edits (if needed) directly with vendor**
**Vendor makes edits**
**Member provides final approval**

*Vendor cannot proceed without a FINAL approval*

citi

Rev: 08/2022

## APPENDIX D
## MONTHLY USAGE – SAMPLE REPORT AND EMAIL

| PDTE | AUTHORIZER | PAN | BANK | TTYPE | RESP | BID | TOWNER | TLOC | TCITY | TSTE | TCNT | TRXAMT | TRXFEE |
|------|-----------|-----|------|-------|------|-----|--------|------|-------|------|------|--------|--------|
| 1-Sep-20 | CIRRUS | 123456******1234 | ABC BANK | WID | APPROVE | 13106 | CITIBAN | 2830 ALUM ROCK AV | SN JSE | CA | US | 50 | 0 |
| 2-Sep-20 | CIRRUS | 123456******1235 | ABC BANK | WID | APPROVE | 13064 | CITIBAN | 4017 MAC ARTHR BL | OAKLND | CA | US | 500 | 0 |
| 3-Sep-20 | CIRRUS | 123456******1236 | ABC BANK | WID | APPROVE | 13010 | CITIBAN | 3490 STVNS CRK BL | SN JSE | CA | US | 760 | 0 |
| 4-Sep-20 | CIRRUS | 123456******1237 | ABC BANK | WID | APPROVE | 36 | CITIBAN | 2261 1ST AVENUE | NY | NY | US | 0 | 0 |
| 5-Sep-20 | CIRRUS | 123456******1238 | ABC BANK | WID | APPROVE | 13051 | CITIBAN | 4638 MISSN ST | SN FRANSCO | CA | US | 20 | 0 |
| 6-Sep-20 | CIRRUS | 123456******1239 | ABC BANK | WID | APPROVE | 13064 | CITIBAN | 4017 MAC ARTHR BL | OAKLND | CA | US | 0 | 0 |
| 7-Sep-20 | CIRRUS | 123456******1240 | ABC BANK | WID | APPROVE | 36 | CITIBAN | 2261 1ST AVENUE | NY | NY | US | 500 | 0 |
| 8-Sep-20 | CIRRUS | 123456******1241 | ABC BANK | WID | APPROVE | 36 | CITIBAN | 2261 1ST AVENUE | NY | NY | US | 280 | 0 |
| 9-Sep-20 | CIRRUS | 123456******1242 | ABC BANK | BAL | APPROVE | 13003 | CITIBAN | 1325 BROADWAY | AKLAND | CA | US | 0 | 0 |
| 10-Sep-20 | CIRRUS | 123456******1243 | ABC BANK | WID | APPROVE | 13003 | CITIBAN | 1325 BROADWAY | AKLAND | CA | US | 100 | 0 |
| 11-Sep-20 | CIRRUS | 123456******1244 | ABC BANK | WID | APPROVE | 13065 | CITIBAN | 1340 OAKDALE RD | MODESTO | CA | US | 40 | 0 |
| 12-Sep-20 | CIRRUS | 123456******1245 | ABC BANK | BAL | APPROVE | 36 | CITIBAN | 2261 1ST AVENUE | NY | NY | US | 0 | 0 |
| 13-Sep-20 | CIRRUS | 123456******1246 | ABC BANK | WID | APPROVE | 13051 | CITIBAN | 4638 MISSN ST | SN FRANSCO | CA | US | 40 | 0 |
| 14-Sep-20 | CIRRUS | 123456******1247 | ABC BANK | BAL | APPROVE | 14139 | CITIBAN | 2022 S. ARCHER AVE | HICAGO | IL | US | 0 | 0 |
| 15-Sep-20 | CIRRUS | 123456******1248 | ABC BANK | BAL | APPROVE | 14441 | CITIBAN | 4887 N BROADWAY | CHICAGO | IL | US | 0 | 0 |
| 16-Sep-20 | CIRRUS | 123456******1249 | ABC BANK | BAL | APPROVE | 14441 | CITIBAN | 4887 N BROADWAY | CHICAGO | IL | US | 0 | 0 |
| 17-Sep-20 | CIRRUS | 123456******1250 | ABC BANK | WID | APPROVE | 14441 | CITIBAN | 4887 N BROADWAY | CHICAGO | IL | US | 100 | 0 |
| 18-Sep-20 | CIRRUS | 123456******1251 | ABC BANK | WID | APPROVE | 112 | CITIBAN | 704 ALLERTON AV | BRONX | NY | US | 100 | 0 |
| 19-Sep-20 | CIRRUS | 123456******1252 | ABC BANK | WID | APPROVE | 36 | CITIBAN | 2261 1ST AVENUE | NY | NY | US | 450 | 0 |

| From: | Citi |
|-------|------|
| To: | Primary Contact for your Institution |
| CC: | community.network@citi.com |
| Attachment: | Monthly Usage Report SecureZip File |
| Subject: | Citi Community ATM Network – Monthly Usage Report as of MM/DD/YYYY |



**Dear Citi® ATM Community Network Member**

Thank you for being a valued member of the Citi® ATM Community Network.

In response to your request to receive more detailed usage data, Citi is pleased to be able to provide you with your customers' monthly usage of Citibank branch ATMs.

Please review the attached report which contains the following information and let us know if you have any questions or concerns.

Report Key:

| Column | Description | Abbreviation |
|--------|-------------|--------------|
| A | Transaction Date | PDTE |
| B | Cardholder's ATM Network | AUTHORIZER |
| C | Primary Account Number | PAN |
| D | Institution Name | BANK |
| E | Transaction Type (i.e. Balance Inquiry = "BAL"; Withdrawal = "WID") | TYPE |
| F | Response (i.e. Approved/Declined/Reversed) | RESP |
| G | Branch ID of the Citibank Branch – Transaction Location | BID |
| H | Transaction Owner | TOWNER |
| I | Transaction Location – Branch Street Address | TLOC |
| J | Transaction City – Branch City | TCITY |
| K | Transaction State – Branch State | TSTE |
| L | Transaction Country – Branch Country – US Only | TCNT |
| M | Transaction Amount – Withdrawal Dollar Amount | TRXAMT |
| N | Transaction Fee* – Fee Amount | TRXFEE |

*If any items are items have a value other than "0", please contact community.network@citi.com

© 2020 Citigroup Inc. All rights reserved. Citi and Arc Design and CitiDirect are registered service marks of Citigroup Inc.

Citi Inclusive Finance
388 Greenwich Street, 18th Floor | New York, NY 10013

citi

This communication is proprietary and confidential business information only intended for use of the individual(s) to whom it is directed and exempt from disclosure under law. Further distribution or use of the contents of this message is prohibited without express permission. If you have received this material in error, please advise the sender immediately by reply e-mail and delete this message. Thank you.

# Exhibit C

**Citi ATM Community Network Participant Institutions**

| Institution | Minority Depository Institution (MDI) Status Based on Government-Agency Sources |
|---|---|
| 1199 SEIU FCU | Yes (NCUA)[i] |
| Abacus Federal Savings | Yes (FDIC)[ii] |
| Amerasia Bank | Yes (FDIC) |
| American Metro Bank | Yes (FDIC) |
| American Plus Bank | Yes (FDIC) |
| Anchor Bank | Yes (FDIC) |
| Bank of Whittier | Yes (FDIC) |
| Brooklyn CoOp FCU | Yes (NCUA) |
| Chicago Municipal Employees | Yes (NCUA) |
| City First Bank of DC | Yes (FDIC) |
| Community First Fund CU | Yes (NCUA) |
| DC Credit Union | Yes (NCUA) |
| Episcopal Community FCU | Yes (NCUA) |
| First Women's Bank | **No (None)** |
| GN Bank | Yes (FDIC) |
| Great Lakes CU | **No (None)** |
| Illiana Financial CU | **No (None)** |
| Industrial Bank | Yes (FDIC) |
| International Finance Bank | Yes (FDIC) |
| JetStream FCU | Yes (NCUA) |
| KEB Hana Bank | Yes (FDIC) |
| Lower East Side Peoples FCU | Yes (NCUA) |
| Maroon Financial CU | **No (None)** |
| Members CU | **No (None)** |
| Merco CU | **No (None)** |
| Mission National Bank | Yes (FDIC) |
| National Bank of Malvern | Yes (OCC) (Woman-Owned Institution)[iii] |
| Neighborhood National Bank | **No (None)** |
| Neighborhood Trust FCU | Yes (NCUA) |
| New Community FCU | Yes (NCUA) |
| New Covenant FCU | Yes (NCUA) |
| North Jersey FCU | Yes (NCUA) |
| Northeast Community FCU | Yes (NCUA) |
| NYU FCU | Yes (NCUA) |
| O.A.S. Staff FCU | Yes (NCUA) |
| OneUnited | Yes (FDIC) |
| Ponce Bank | Yes (FDIC) |
| Quontic Bank | **No (None)** |
| Royal Business Bank | Yes (FDIC) |

| | |
|---|---|
| SCE FCU | **No (None)** |
| Self-Help Credit Union | Yes (NCUA) |
| South Side Community FCU | Yes (NCUA) |
| Spring Bank | **No (None)** |
| Sunrise Banks (MoCaFi) | **No (None)** |
| The Finest CU | **No (None)** |
| United Cities CU | Yes (NCUA) |
| Universal Bank | Yes (FDIC) |
| USAlliance | **No (None)** |
| USC CU | Yes (NCUA) |
| Valley First CU | **No (None)** |

---

[i] NCUA refers to the National Credit Union Administration's List of Minority Depository Institutions, accessible at https://ncua.gov/support-services/credit-union-resources-expansion/resources/minority-depository-institution-preservation/mdi (last visited July 8, 2024; information as of the "March 2024 Call Report Cycle").

[ii] FDIC refers to the Federal Deposit Insurance Corporation's Minority Depository Institutions List as of Q1 2024, accessible at https://www.fdic.gov/regulations/resources/minority/mdi.html (last visited July 8, 2024) (CSV with information as of the "March 2024 Call Report Cycle" (last visited July 8, 2024; list available for download as of "First Quarter 2024").

[iii] OCC refers to the Office of the Comptroller of the Currency's December 31, 2023 List of OCC-Supervised Minority Depository Institutions, accessible at https://www.occ.treas.gov/topics/consumers-and-communities/minority-outreach/minority-depository-institutions-list.pdf (last visited July 8, 2024).