**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No. 0:24-cv-60834-Singhal

WERNER JACK BECKER, DANA
GUIDA, individually and on behalf of
others similarly situated,

      Plaintiffs,

v.

CITIGROUP INC. d/b/a CITIBANK and
CITIBANK, N.A.,

      Defendants.

---

**DEFENDANTS' MOTION TO STAY DISCOVERY**
**PENDING RULING ON MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendants Citigroup Inc. ("Citigroup") and Citibank, N.A. ("Citibank") respectfully move this Court for a stay of discovery pending adjudication of their Motion to Dismiss the Amended Complaint Pursuant to Rule 12(b)(1) and Rule 12(b)(6) [ECF 41] (the "Motion to Dismiss" or "MTD"), filed on August 14, 2024.

**INTRODUCTION**

The Amended Complaint did nothing to fix the core deficiencies in Plaintiffs' case. As more fully explained in Citibank's Motion to Dismiss, Plaintiffs lack Article III standing to bring this action because they cannot show a particularized injury-in-fact that is traceable to Citibank's ATM Community Network program, or redressable by this Court. The "Network" is premised on a series of bilateral agreements between Citibank and other financial institutions. The Network does not waive fees for individuals (like these Plaintiffs) *unless* the institution where they bank is

interested and willing to enter into (and actually does enter) a Network Agreement with Citibank, taking on the reciprocal contractual obligations set forth therein.

No matter what their banks' eligibility for the Network, Plaintiffs cannot claim they were injured as a result of the ATM Community Network without showing that the financial institutions where they bank, Chase and Bank of America, are (and were at all relevant times) interested in and willing to join the Network. Here, Plaintiffs have not pleaded, and cannot plead, any such facts about their own banks—non-parties whose decision-making Plaintiffs do not control. So Plaintiffs cannot satisfy the Eleventh Circuit's longstanding "able and ready" standard for standing in cases under 42 U.S.C. § 1981. *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 772–75 (11th Cir. 2024). What is more, as set forth in the form of the Network Agreement, filed with the declaration supporting Citibank's Motion to Dismiss (MTD, Ex. 1), [ECF 41-1], a contracting bank is obliged to accept several conditions of participation in the Network, such as waiving the institution's own out-of-network ATM fees and engaging in certain co-marketing efforts. If the institutions where Plaintiffs bank are not "able and ready" to enter into Network Agreements, then Plaintiffs are not themselves "able and ready" to access a waiver conditioned on those agreements.

As a result, the Court lacks subject matter jurisdiction in this case, and the case should proceed no further, including into discovery. Citibank's Rule 12(b)(1) motion can be resolved on the pleadings as a facial attack based on Plaintiffs' failure to plead the institutions where they bank are willing to join the Network. In the alternative, as a factual attack, Citibank's Rule 12(b)(1) standing motion relies on a *single* fact outside of the allegations and concessions contained in the

Amended Complaint itself: the terms of the contract with Network Institutions attached as Exhibit B to the Declaration of Marco Chavarin.  MTD, Ex. 1, Ex. B.[1]

Even if Plaintiffs had standing, their claims would be subject to dismissal on multiple independent grounds for failure to state a claim under Rule 12(b)(6), as further explained in Citibank's Motion to Dismiss. Discovery—particularly discovery into the merits, issues involving whether the proposed class can be certified under Rule 23's strictures, and alleged damages, all of which Plaintiffs have recently propounded—is inappropriate until the Court has determined whether it even has subject matter jurisdiction and whether the claims can otherwise survive the dispositive Motion to Dismiss. *See Dry Tech 24/7, Inc. v. The Clorox Company*, 2022 WL 20834472, at *1 (S.D. Fla. Dec. 2, 2022) (Singhal, J.) (granting stay of discovery and noting that the Eleventh Circuit has consistently "expressed its concern regarding the burdens and costs of conducting discovery before potentially dispositive motions are resolved"); *see also Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308 (11th Cir. 2020); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997).

## BACKGROUND

### Plaintiffs' Allegations

Plaintiffs Werner Jack Becker and Dana Guida ("Plaintiffs") first filed this action on May 17, 2024, on behalf of a sprawling nationwide putative class. *See generally* Compl. [ECF 1]. Their claims stem from their objections to Citibank's "ATM Community Network" program. *Id.* ¶ 13. The ATM Community Network program was, per the Complaint, announced in a press release on July 14, 2016. *Id.* The press release explains that the Network consists of participating financial

---

[1] Citibank also previously filed an executed example of a Network Agreement under seal [ECF 29-1 (filed under seal); ECF 32], which is similar in relevant respects to the public form of Network Agreement attached to Mr. Chavarin's  Declaration.

institutions who choose to join the program so that their customers will have free access to Citibank's branch ATMs in select locations in the United States.[2]

Plaintiffs initially alleged that the ATM Community Network program "does not charge out-of-network ATM fees to people who bank at financial institutions that are 'minority owned,'" but continued to charge the customary fee for other withdrawals. *Id.* ¶¶ 3, 6–7, 13. Plaintiffs alleged that they were charged out-of-network fees at Citibank ATMs in South Florida in June and July of 2023 as a result of their banks' exclusion from the program, but did not name their banks. *Id.* ¶¶ 6–7. Plaintiffs purported to assert "Associational Discrimination" claims under 42 U.S.C. § 1981 and the California Unruh Act. *Id.* ¶¶ 55–65.

Defendants filed an initial motion to dismiss. [ECF 29]. Among other arguments, renewed as discussed below, Defendants contended that Plaintiffs lacked standing to sue over their banks' allegedly-wrongful exclusion from the program without any showing as to their banks' interest or willingness to enter such a program (or any information about their banks) and that Plaintiffs could not state a claim for associational discrimination based on a policy that concededly did not consider their own race. *Id.* at 8–20. Rather than file an opposition, Plaintiffs filed an Amended Complaint. [ECF 36]. Among other things, the Amended Complaint no longer alleged that all institutions in the Network program are minority owned. Am. Compl. ¶¶ 27, 30. Plaintiffs also filed an opposition [ECF 37] to Defendants' original motion to stay discovery [ECF 33]. This Court determined that the then-pending motion to dismiss and motion to stay discovery were mooted by the filing of an Amended Complaint. [ECF 38].

---

[2] *See* Press Release, Citigroup Inc., Citi Introduces Citi ATM Community Network (July 14, 2016), https://www.citigroup.com/global/news/press-release/2016/citi-introduces-citi-atm-community-network-providing-surcharge-free-atm-access-to-partner-credit-union-and-minority-owned-bank-customers ("The Citi ATM Community Network will mean participating organizations have free access to roughly 2,400 branch ATMs in Citi's markets in the U.S.").

**The Pending Motion to Dismiss the Amended Complaint**

On August 14, 2024, Citibank filed a Motion to Dismiss the Amended Complaint on the bases that (1) the Court lacks subject matter jurisdiction over the action because Plaintiffs lack Article III standing to assert the claims, and (2) Plaintiffs fail to assert any viable legal theories or necessary facts to state a claim on their Section 1981 or Unruh Act causes of action. As set forth in Citibank's Motion to Dismiss, Plaintiffs cannot establish that they are "able and ready" to participate in the ATM Community Network program, as would be required to establish standing, because only financial institutions (not individuals) may enter the program, and Plaintiffs cannot allege that the financial institutions at which they bank have either an interest entering the program or a willingness to undertake the reciprocal contractual obligations required of participating financial institutions. MTD at 10–18.

As with its original motion to dismiss, Citibank filed the Network Agreement that it requires every participating institution in the ATM Community Network to sign. *Id.*, Ex. 1, Exs. A, B. As set forth in the accompanying Declaration of Marco Chavarin, a participating institution "must agree to enter into the ATM Network Agreement contract and its terms in order to become a part of the Network, and obtain any Network benefits for its customers' accounts." *Id.*, Ex. 1 ¶ 5. Further, any institution refusing to accept the terms of the Network Agreement "would not be admitted to the Citibank ATM Community Network, and would therefore not be eligible to have ATM fees waived." *Id.*, Ex. 1 ¶ 8. These facts are uncontroverted in the Amended Complaint or otherwise by Plaintiffs and are dispositive of the Court's inquiry on standing.

Further, Plaintiffs fail to state claims under Section 1981 or Unruh on various grounds. Among these are that: (1) Plaintiffs' newly-contrived "direct-discrimination" theory is foreclosed by binding precedent, and does not plausibly plead discrimination based on perceived race, MTD

at 18–23; (2) Plaintiffs' original purported "associational-discrimination" theory still fails because they cannot allege discrimination based on their own race (which Citibank does not know) and cannot legally and have not factually alleged a sufficient association, *id.* at 23–29; (3) they cannot allege any discriminatory "contract" that these Plaintiffs can invoke, *id.* at 29–33. Finally, their supposed California claims are subject to the further flaw that it does not state a claim under Rule 12(b)(6) since Unruh does not apply extraterritorially outside of California, and these Plaintiffs solely allege Florida-based conduct. *Id.* at 33–35.

**Plaintiffs' Discovery Requests**

On the same day that Defendants filed their initial motion to dismiss, Plaintiffs served requests for production and interrogatories on Citibank seeking discovery concerning a putative class "of at least thousands of customers," [ECF 1] ¶ 38, [ECF 36] ¶ 71, and spanning a nearly decade-long period, of January 1, 2015, to the present. *See* Ex. 1 (Requests for Production) at 3; Ex. 2 (Interrogatories) at 5.[3] These seek, among other things, class-wide information about the merits, and purported damages. *See generally*, Exs. 1, 2. Plaintiffs also seek extensive document productions, including on issues relevant to the Rule 23 class-certification decision, and sweeping merits discovery dating to 2015 involving, among other matters, "the design, planning, implementation and, and maintenance of the Policy," as well as documents disclosed to Citibank's "shareholders, employees, regulators, government agencies, legislative bodies, consumers, and the public." Ex. 1, Requests Nos. 2, 4. As for damages, Plaintiffs seek extensive discovery, unlimited

---

[3] Defendants have not propounded any discovery requests. The ATM Community Network, around which Plaintiffs' claims revolve, is a program in which participating financial institutions contract with Citibank. Citigroup Inc. is a holding company and is not a party to the Network Agreements by which financial institutions may enter the program, does not operate ATMs, does not maintain the records related to the program, and does not expect to rely on witnesses to support its claims or defenses in this action, except as may be necessary to demonstrate that it is not a proper defendant based on the foregoing.

in scope or branch locations, with requests such as to "[d]escribe in Detail how many Fees Citi has charged each of the last four calendar or fiscal years at Citibank Branches, separated by year and U.S. state," Ex. 2, Interrogatory No. 1, and document productions showing "how many times Citi waived Fees under the [ATM Community Network] at each Citibank Branch" and "the number of distinct persons who were charged Fees at each Citibank Branch" since May 17, 2020, Ex. 1, Requests Nos. 6, 7. Such information would be nationwide in scope and could involve hundreds of U.S. Citibank branches and records from over 2,300 ATMs across those branches. Am. Compl. ¶ 9 ("over 2,000 branches" globally and "654 branch locations in the United States"); *see supra* n.1.[4]   Citibank served its responses and objections to Plaintiffs' discovery requests on August 9, 2024.

### **The Parties Have Met and Conferred**

On August 13, 2024, counsel for the parties conferred as required by Local Rule 7.1(a)(3) over Citibank's proposal to stay discovery. Counsel for Plaintiffs informed undersigned counsel that Plaintiffs oppose a stay.

### **ARGUMENT**

"The District Court has broad discretion to stay proceedings as incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001). Discretion in favor of a stay should be exercised when a party demonstrates "good cause and reasonableness." *Pierce v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 12528362, at *1 (S.D. Fla. Dec. 10, 2014) (citing *Varga v. Palm Beach Cap. Mgmt., LLC*, 2010 WL 8510622, at *1 (S.D. Fla. Sept. 3, 2010)).

---

[4] *See also Citibank ATMs around the world*, Citi.com, https://tinyurl.com/2vfsc5tx (explaining there are "[m]ore than 2,300 ATMs in over 600 Citibank branches" in the U.S.).

When determining whether good cause exists to grant a stay, courts often "tak[e] a 'preliminary peek' [at the pending motion] to see if [the] motion is meritorious and truly case dispositive." *Chevaldina v. Katz*, 2017 WL 6372620, at *3 (S.D. Fla. Aug. 28, 2017) (citation omitted). A stay of discovery is particularly appropriate where, as here, the motion goes to the Court's jurisdiction to hear the case at all. *See, e.g.*, *Lawrence v. Governor of Georgia*, 721 F. App'x 862, 864–65 (11th Cir. 2018) (affirming stay of discovery based on "court's likely lack of subject matter jurisdiction" and other issues "apparent from the face of the complaint"); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2021 WL 10428229, at *3 (S.D. Fla. Oct. 9, 2021) ("[W]hen faced with legitimate jurisdictional and standing challenges like those present in Defendants' Motion to Dismiss, discovery should not commence until such challenges are resolved."). Accordingly, courts in this district have found good cause to grant a stay of discovery when defendants have alleged jurisdictional challenges in a motion to dismiss.[5] A motion to stay discovery is also supported by good cause if granting the motion to dismiss is likely to substantially narrow the scope of claims and potential defendants. *See, e.g.*, *Lewis*, 2020 WL 4923640, at *2 (granting motion to stay because the motion to dismiss, even if granted in part, would "substantially impact the viability of claims against one or more Defendants and drastically alter the scope of discovery"); *In re Mednax Services*, 2021 WL 10428229, at *2 (same).

When determining whether reasonableness exists to grant a stay, the Court balances "the harm produced by a delay in discovery against the possibility that the motion will be granted and

---

[5] *See, e.g.*, *Lewis v. Mercedes-Benz USA, LLC*, 2020 WL 4923640, at *3 (S.D. Fla. Mar. 25, 2020) ("[W]hen faced with legitimate jurisdictional challenges . . . discovery should not commence until such challenges are resolved."); *see also Rodriguez v. Imperial Brands plc*, 2022 WL 2231504, at *3–4 (S.D. Fla. May 25, 2022); *Gillier v. Servicios Agecom, LLC*, 2017 WL 6994217, at *1–2 (S.D. Fla. Nov. 27, 2017); *McCullough v. Royal Carib. Cruises, Ltd.*, 2017 WL 6372619, at *1 (S.D. Fla. Jan. 11, 2017) (staying merits-based discovery given defendants' motion to dismiss for lack of personal jurisdiction).

entirely eliminate the need for such discovery." *Khan v. Rundle*, 2006 WL 8433502, at *1 (S.D. Fla. July 17, 2006). Courts may also find a stay is reasonable when the resolution of the pending motion to dismiss will likely alter discovery's scope. *See Gill-Samuel v. Nova Biomed. Corp.*, 2014 WL 11762719, at *1 (S.D. Fla. Feb. 18, 2014) (granting discovery stay in a putative class action where discovery would place a heavy burden on defendants).

Here, the request for a stay is not only supported by good cause, it also is reasonable.

*First*, good cause for a stay of discovery exists, as a preliminary peek at the Motion to Dismiss establishes that Citibank will likely succeed in dismissing Plaintiffs' Amended Complaint in whole. As explained further in Citibank's Motion to Dismiss, Plaintiffs do not and cannot allege a redressable injury-in-fact traceable to Citibank's ATM Community Network program necessary to have Article III standing to pursue its claims under Section 1981. MTD at 10–18. Specifically, Plaintiffs cannot allege that they are "able and ready" to join the Citibank ATM Community Network program as required under Article III standing because they, as natural persons, cannot apply for the program on their own. *Id.* Nor can Plaintiffs speak for their banks as to their potential commercial decisions, let alone establish that these banks are "able and ready" to join the program or would have any interest in joining the program. *Id.* Given these incurable standing deficiencies, Citibank respectfully submits that the Motion to Dismiss is "meritorious and truly case dispositive." *Chevaldina*, 2017 WL 6372620, at *3; *see also Lewis*, 2020 WL 4923640, at *2. Accordingly, because the Court is "faced with legitimate jurisdictional challenges," good cause exists and "discovery should not commence until such challenges are resolved." *Lewis*, 2020 WL 4923640,

at *3; *see also Rodriguez*, 2022 WL 2231504, at *3–4 ; *Gillier*, 2017 WL 6994217, at *1–2;
*McCullough*, 2017 WL 6372619, at *1.[6]

Setting aside jurisdictional issues, and as detailed in the Motion to Dismiss, Plaintiffs
further fail to state claims (1) under Section 1981 because Plaintiffs do not plead actionable
discrimination based on their own race, or any discriminatory "contract" they can invoke, MTD at
18–33, and (2) under the California Unruh Act, both because Plaintiffs only allege Florida-based
conduct, and for the reasons Plaintiffs' Section 1981 claim fails, *id.* at 33–35. It is well-established
that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss
based on failure to state a claim for relief"—such as Citibank's—"should . . . be resolved before
discovery begins." *Heikka v. Safeco Ins. Co. of Illinois*, 2021 WL 10256974, at *1 (S.D. Fla. Nov.
1, 2021) (Singhal, J.) (quoting *Chudasama*, 123 F.3d at 1367); *Dry Tech 24/7, Inc.*, 2022 WL
20834472, at *1 (Singhal, J.); *Padilla v. Porsche Cars N. Am., Inc.*, 2019 WL 1281484, at *1 (S.D.
Fla. Mar. 19, 2019) (same). The Court should thus grant this Motion and stay discovery pending
resolution of the Motion to Dismiss that has the potential to end the case. *See SandP Sols., Inc. v.
The Silver Logic, LLC*, 2021 WL 9347080, at *2 (S.D. Fla. Nov. 1, 2021) (noting that "a discovery
stay is usually granted when a motion will be dispositive of the entire case"); *Nuwer v. FCA US*

---

[6] In their opposition to the prior motion to stay discovery, Plaintiffs argued that Citibank's
original standing challenge was "intertwined" with the merits because it asserted that the ATM
Community Network's eligibility criteria "w[ere] not race-based." [ECF 37] at 11. Plaintiffs were
wrong that Citibank's prior motion was intertwined with the merits. But, it does not matter.
Citibank's standing challenge to the Amended Complaint does not request (or require) the Court
to decide whether Network eligibility includes racial criteria for banks' eligibility to join the
Network. Accordingly, the Motion to Dismiss Plaintiffs' Amended Complaint makes no argument
based on whether the criteria were race based. MTD at 10 n.4. In actuality, though, the criteria for
a financial institution's eligibility into the Network are *all* race neutral, but that is not presented at
this stage of the litigation. Moreover, Plaintiffs now concede that a significant number of
participating banks and credit unions are not Minority Depository Institutions. *See* Am. Compl.
¶¶ 27, 30 (no longer alleging that the Network is limited to minority-owned institutions).

*LLC*, 2020 WL 5748745, at *1–2 (S.D. Fla June 25, 2020) (Singhal, J.) (staying discovery because the Court "agree[d] with Defendants' assessment that the motions, if granted, would substantially reduce the scope of the claims").

*Second*, the requested stay is reasonable as the potential harm to the parties resulting from the stay is outweighed by the potential costs and burdens the parties would incur if discovery proceeds. Indeed, a cursory review of the discovery requests Plaintiffs have already issued to Citibank reveals the significant cost and burden that would be required to provide the requested information. By way of example, Plaintiffs seek extensive discovery on the merits and class-wide damages, such as documents showing "how many times Citi waived Fees under the Policy" and "the number of distinct persons who were charged Fees at each Citibank Branch from May 17, 2020, to the present." Ex. 1, Requests Nos. 6, 7; *see supra* at 6–7. Providing such discovery would require countless hours and high costs in collecting, processing, reviewing, and producing a wide array of documents relating to this action (which is likely to be dismissed for the reasons previously stated). Meanwhile, this significant burden does not yet account for the affirmative discovery Citibank would ultimately need to serve on Plaintiffs, and the burden and costs Plaintiffs will incur in providing such discovery.

On the other hand, none of the parties will suffer harm or prejudice from a stay of the proceedings pending the Court's decision on the Motion to Dismiss. Plaintiffs' propounded discovery is irrelevant to standing, and Plaintiffs need no discovery whatsoever from Citibank to determine whether the financial institutions where they bank are "able and ready" to join the ATM Community Network, a Citibank-branded program. The Network Agreements filed by Citibank, given their significant reciprocal obligations, are dispositive on this point. Without a showing that Plaintiffs' financial institutions would sign the required Network Agreements (an implausible

proposition for Plaintiffs' banks, as Citibank's Motion to Dismiss explains), Plaintiffs cannot establish standing, and no discovery from Citibank could demonstrate that Plaintiffs' non-party financial institutions want to or would sign such Network Agreements.

Given the likelihood of this action being dismissed and the inevitable burdens of discovery, a stay will save costs, "promote judicial economy," and "reduce confusion and prejudice" while the Court considers the pending Motion to Dismiss. *Heikka*, 2021 WL 10256974, at *1; *SandP Sols., Inc.*, 2021 WL 9347080, at *2 ("A discovery stay therefore will 'avoid a massive waste of judicial and private resources.'") (quoting *Rivas v. Bank of N.Y. Mellon*, 676 F. App'x 926, 932 (11th Cir. 2017))). Moreover, given the Court's efficient and expeditious control of its docket, Citibank anticipates any potential stay will be brief and will not significantly disrupt the parties' case management schedule. Indeed, Citibank has expeditiously filed its Motion to Dismiss without seeking any extension and promptly filed this renewed Motion to Stay Discovery.  In the unlikely event that any of Plaintiffs' claims survive the Court's ruling on the Motion to Dismiss, the Court can, if needed, reset appropriate discovery deadlines with minimal delay to the case management schedule to afford Plaintiffs ample opportunity to engage in any appropriate discovery. *See Pierce*, 2014 WL 12528362, at *1 ("[T]he Court finds that a brief stay in discovery would not prejudice Plaintiff and should the case proceed, Plaintiff will have ample opportunity to conduct discovery.").

Thus, considering that the dispositive Motion to Dismiss is pending and meritorious as to lack of standing and a failure to state a claim, the parties will not be harmed with a brief stay of all discovery, whereas the parties would incur significant burdens and costs if required to proceed class, merits, and/or damages discovery now. This Motion should be granted.

**WHEREFORE**, for the foregoing reasons, Defendants respectfully requests that the Court stay discovery in this action pending the Court's decision on the Motion to Dismiss and reset all discovery and other deadlines in this case if necessary only if some portion of the Amended Complaint survives dismissal.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), Defendants certify they have conferred with counsel for Plaintiffs, who oppose the Motion.

Dated: August 14, 2024                     Respectfully submitted,

                                           */s/ Eliot Pedrosa*
                                           Eliot Pedrosa
                                           Florida Bar No. 182443
                                           epedrosa@jonesday.com
                                           JONES DAY
                                           600 Brickell Avenue, Suite 3300
                                           Miami, FL 33131
                                           Telephone:  (305) 714-9700
                                           Facsimile:  (305) 714-9799

                                           Jayant W. Tambe (*admitted pro hac vice*)
                                           Alexander V. Maugeri (*admitted pro hac vice*)
                                           JONES DAY
                                           250 Vesey Street
                                           New York, NY 10281
                                           Telephone: (212) 326-3939
                                           Facsimile: (212) 755-7306
                                           amaugeri@jonesday.com
                                           jtambe@jonesday.com

                                           Christopher Pagliarella (*admitted pro hac vice*)
                                           JONES DAY
                                           51 Louisiana Avenue, N.W.
                                           Washington, D.C. 20001
                                           Telephone: (202) 879-3939
                                           Facsimile: (202) 626-1700
                                           cpagliarella@jonesday.com

                                           ***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 14, 2024, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

*/s/ Eliot Pedrosa*
Eliot Pedrosa
***Attorney for Defendants***