UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-60834-CIV-SINGHAL

WERNER JACK BECKER, DANA GUIDA,
individually and on behalf of others
similarly situated,

      Plaintiffs,

v.

CITIGROUP INC. d/b/a CITIBANK and
CITIBANK, N.A.,

      Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants Citigroup Inc. d/b/a Citibank and Citibank, N.A.'s ("Citibank," "Citi," or "Defendants," collectively) Incorporated Motion to Dismiss the Amended Complaint (the "Motion") (DE [41]), filed on August 14, 2024. Plaintiffs Werner Jack Becker and Dana Guida ("Plaintiffs") filed their Opposition to Defendants' Motion to Dismiss (the "Opposition") (DE [48]) on September 27, 2024. Defendants filed their Reply in Support of Defendants' Motion to Dismiss the Amended Complaint (the "Reply") (DE [49]) on October 7, 2024. As such, the Motion is ripe for adjudication. The Court has reviewed Parties' filings and the docket and is otherwise advised in the premises.[1]

## BACKGROUND

_____

[1] At the outset, the Court would be remiss if it failed to note how well done the legal work has been on this case from both sides. Numerous cases have come before the Court with marginal lawyering. Some have come before the Court with excellent lawyering. This case presents some of the best pleadings the Court has reviewed.

Headquartered in New York, NY and incorporated in Delaware, Citigroup is one of the world's largest multinational investment banks and financial services corporations. (DE [36] at ¶ 8).  Citibank, a subsidiary of Citigroup, is also headquartered in New York, NY and incorporated in Delaware.  *Id.* at ¶ 9.  With over 2,000 worldwide locations, more than 650 of which are in the United States, Citibank is "one of the largest institutions of its kind in the world. . ."  *Id.*  This dispute centers on Citibank's ATM Community Network program, which was first announced on July 14, 2016.  *Id.* at ¶ 13.

When using Citibank's ATMs to withdraw cash from institutions outside of Citibank's ATM network, customers are charged an out-of-network fee, and their personal data is collected.  *Id.* at ¶ 12.  This protocol is consistent with that of "most banks."  *Id.*  However, under Citi's ATM Community Network program, eligible financial institutions can have the ATM fees waived for their customers.  *Id.* at ¶ 13.  This requires entering an agreement, under which prospective institutions agree to: (a) not charge their own customers a fee when they use a Citibank ATM; (b) assist in distributing Citibank-approved marketing materials pertaining to the program; (c) approve Citibank's use of participating institutions' trademarks; (d) share data and other necessary technical conditions; (e) indemnify Citibank in certain circumstances; and (f) the exclusive jurisdiction of courts in New York City.  (DE [41] at p. 9-10).  Three types of banks are eligible: (i) minority-owned banks; (ii) a Community Development Credit Union ("CDCU"); or (iii) a Community Development Financial Institution ("CDFI").  (DE [36] at ¶ 27).  A CDCU is a credit union that "is a member of . . . a nonprofit association of banks that specialize in providing particular types of financial products," and a CDFI is a bank "that

2

is certified by the Department of Treasury as, among other things, having customers in low-income communities." (DE [48] at p. 5).

If a financial institution is not part of the ATM Community Network, Citibank continues to charge that institution's customers the usual ATM fees. (DE [48] at p. 2). Plaintiffs Werner Jack Becker and Dana Guida bank at Chase Bank and Bank of America, respectively,[2] and neither is eligible for Citibank's fee-waiver policy. (DE [36] at ¶¶ 6-7). But that is where this litigation commences, as Plaintiffs both allege that they were charged an out-of-network fee at South Florida Citibank ATMs in mid-2023. *Id.* Even though Plaintiffs acknowledge that Citibank's out-of-network fees "predated" its ATM Community Network program, they nevertheless argue that Citibank "intentionally discriminated against Plaintiffs and those similarly situated. . ." *Id.* at p. 2. In fact, Plaintiffs posit that the "express goal of the Policy was racial discrimination," ensuring "cheaper access to ATMs for customers who do business with banks that are owned by, or serve, members of Citi's preferred races." (DE [48] at p. 2). In this vein, on July 31, 2024, Plaintiffs filed an Amended Complaint (DE [36]), which Defendants argue should be dismissed for lack of standing and failure to state a claim.

<u>LEGAL STANDARD</u>

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rather, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for

---

[2]     As Defendants note, Citibank "provides access to a *smaller* ATM network" than that of either Bank of America or Chase Bank. (DE [41] at p. 11); *see also* (DE [41] at p. 2, n. 1).

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012).

A motion to dismiss for lack of standing under Rule 12(b)(1) implicates subject matter jurisdiction. *Mack v. USAA Cas. Ins. Co.,* 994 F.3d 1353, 1359 (11th Cir. 2021). To establish standing, a plaintiff must show "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *L.M.P. on behalf of E.P. v. Sch. Bd. of Broward Cty., Fla.*, 879 F.3d 1274, 1281 (11th Cir. 2018) (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)). "At the pleading stage, the plaintiff must clearly allege facts demonstrating each of these elements." *Gesten v. Burger King Corp.*, 2017 WL 4326101, at *1 (S.D. Fla. Sept. 27, 2017) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016)). "Motions to dismiss for lack of standing come in two forms, 'facial' and 'factual' attacks." *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.,* 965 F.3d 1210, 1216 (11th Cir. 2020). "When a defendant makes a facial attack on the plaintiff's standing to sue, [the court] must accept as true the well-pleaded allegations in the complaint." *Id.* An order granting a Rule 12(b)(1) motion to dismiss is not a judgment on the merits. *Stalley ex rel. U.S. v. Orlando Reg. Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  The court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true*.  See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).   But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Dismissal of a complaint is also warranted in situations where "it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

With their Motion, Defendants seek dismissal of Plaintiffs' Amended Complaint, making the case that Plaintiffs lack Article III standing under Rule 12(b)(1).  In the alternative, Defendants contend that Plaintiffs fail to allege a Section 1981 claim or one under the California Unruh Act, and so dismissal would be appropriate even if the Court determines that Plaintiffs have Article III standing.  The Court has considered the Parties' well-articulated arguments on all grounds, but its analysis will be limited to the Article III standing issues, as those are sufficient for dismissal.

According to Defendants, Plaintiffs did not establish either the injury-in-fact requirement or the traceability requirement for standing, because they have not shown

"that their banks' nonparticipation in the Network (and the resulting denial of a fee waiver) arose from any racial eligibility requirements."  (DE [41] at p. 11).  Defendants maintain that Plaintiffs would need to "present facts supporting a bona fide interest in and ability to 'actually take' action to obtain that benefit, absent the allegedly unlawful racial criteria." *Am. All. For Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 772 (11th Cir. 2024). In this context, Defendants suggest that Plaintiffs' hands are tied—that Plaintiffs simply do not have the ability to plead the required facts, because they are "natural persons who do not control financial institutions [and] cannot apply for that program . . ." (DE [41] at p. 12).  As such, Defendants contend that Plaintiffs' Amended Complaint lacks the sort of allegations needed to confer standing: that Chase Bank or Bank of America had "any interest" in participating in Citibank's ATM Community Network program or that either institution "would be willing to enter into the required Network Agreement and accept its reciprocal obligations, including comarketing with a competitor."  *Id.* at p. 13.

   In rebuttal, Plaintiffs frame their theory of standing as "straightforward."  (DE [48] at p. 8).  For their associational discrimination claims—embodied by Counts I and III of the Amended Complaint—Plaintiffs argue they have standing, as they were charged higher ATM fees "because they did not bank with financial institutions that were minority-owned."  *Id.*  More simply put, Plaintiffs argue standing exists, because they suffered "direct monetary harm."  *Id.* at p. 10.  As for the direct discrimination claims—present in Counts II and IV of the Amended Complaint—Plaintiffs assert that Citibank "perceives customers of [institutions eligible for the ATM Community Network policy] to be minorities, because . . . those banks serve 'communities of color.'"  *Id.*  Hence, Plaintiffs argue Defendants "directly discriminated against Plaintiffs because [Citibank] did not perceive

6

[Plaintiffs] to be minorities."   *Id.*   For Plaintiffs, the elements of traceability and redressability logically follow: "Plaintiffs' payment of the [ATM] fee is . . . directly traceable to the discriminatory Policy.   And Plaintiffs' injuries are redressable by an award of monetary damages."  *Id.* at p. 11.

Yet, despite Plaintiffs' best efforts, the Court cannot find Article III standing in the present circumstances.   Though Plaintiffs cite "pocketbook harm," the Court does not consider Plaintiffs harmed by the requirement they pay out-of-network fees to utilize Citibank's ATMs as customers of two of Citibank's close competitors.   (DE [48] at p. 16). It is logical that any financial institution would charge its rivals' customers to access its services; Plaintiffs themselves concede there is nothing unusual about such fees.  *See id.* at p. 2 ("*Like most banks*, Citi typically charges non-Citi customers an out-of-network fee. . .") (emphasis added).  And even if Citibank had not launched the ATM Community Network program—the one Plaintiffs describe as discriminatory—Plaintiffs would still pay the same fee to access Citibank's ATMs.  Plaintiffs seem aware of these considerations; in their requested relief, Plaintiffs do not seek to invalidate the existing standard of charging out-of-network fees—which would be untenable—but instead seek an end to the practice of waiving fees for customers of qualifying institutions.  All the same, this does not help Plaintiffs' attempt to establish standing for the instant case, because their desired remedy would not change "the situation [they] would have occupied if the [alleged] wrong had not been committed."  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-19 (1975).

As the Court has previously observed, financial institutions may offer their customers the benefits of Citibank's ATM Community Network policy, provided that the institution agree to Citibank's contractual terms.  Individual customers, such as Plaintiffs,

cannot separately nor independently opt into Citibank's policy; entry into the program requires a contractual agreement between the respective institutions and Citibank. This feature is critical as the Court parses and evaluates the Parties' dueling arguments on what is necessary to establish standing. The Plaintiffs' own interest in using Citibank's ATMs would not be sufficient, because they cannot apply for or access the fee-waiver program on their own. The barrier for Plaintiffs here is not purportedly discriminatory criteria for Citibank's policy, but rather that their preferred banking institution has not enrolled. Here, the Court considers Defendants' argument centering on patrons of out-of-network minority depository institutions (MDIs)—who also pay the ATM fee—to be persuasive: under Plaintiffs' own logic, those MDIs' customers "would also have standing to bring this lawsuit—despite experiencing no discrimination (even under Plaintiffs' theories)." (DE [49] at p. 5).

Yet, the Amended Complaint does not include any allegations that either Chase Bank or Bank of America made attempts to participate in Citibank's policy but were unable to or blocked from doing so. Nor do Plaintiffs describe any interest by either bank to register for Citibank's policy going forward. On some level, it remains unlikely that either bank would seek to, given they offer customers more expansive ATM coverage than Citibank. But in any case, the decisionmakers for these institutions have agency to decide to join Citibank's initiative—and thus an essential role in determining whether Plaintiffs could receive the fee waiver—which Plaintiffs are too eager to gloss over. Without pertinent allegations about the banks' desire to sign up for Citibank's policy, Plaintiffs are not able to "sufficiently demonstrate an intent to take the action [they assert] is prohibited," and therefore are not able to establish an injury in fact. *Fearless Fund*, 103 F.4th at 772.

Plaintiffs suggest they seek "retrospective relief against discrimination that has already happened," so the 'able and ready' standard from *Fearless Fund* does not apply. (DE [48] at p. 11).  But this is not a persuasive rebuttal to Defendants' theory.  As a threshold matter, Plaintiffs seek forms of prospective relief in their Amended Complaint. *See* (DE [36] at ¶¶ 115-16) ("Declaratory relief declaring the Policy violates federal and California law" and "Injunctive relief prohibiting Defendants from advertising or implementing the Policy").  But even when narrowing in on the retrospective relief that Plaintiffs request, their case for standing still falls short.  As the Supreme Court noted, a "direct pocketbook injury" cannot be the basis for standing if "the complained-of-costs" would continue to incur irrespective of the disputed policy.  *Haaland v. Brackeen*, 599 U.S. 255, 296 (2023).  This Court has already noted that Plaintiffs would continue to pay out-of-network fees even without Citibank's ATM Community Network policy.  This Court has also pointed out the void in Plaintiffs' Amended Complaint, given the lack of allegations about Plaintiffs' banking institutions and potential engagement with Citibank about its policy.  Given these roadblocks to alleging a concrete injury linked to unlawful criteria, Plaintiffs' Amended Complaint must be dismissed for lack of standing, and the Court need not address the substantive merits of the claims brought forward.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendants' Incorporated Motion to Dismiss the Amended Complaint (DE [41]) is **GRANTED.**

2. The Amended Complaint (DE [41]) is **DISMISSED WITH PREJUDICE.**

3. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 26th day of

March 2025.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF